**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 1 4 2007   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————— x

ROBERT BAUGHMAN, Individually and On  :
Behalf of All Others Similarly Situated,
                                       :
                    Plaintiff,         :

          vs.                          :

PALL CORP., ERIC KRASNOFF and LISA     :
MCDERMOTT,
                                       :
                    Defendants.        :
                                       :
——————————————————————— x

Civil Action No.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS

JURY TRIAL DEMANDED

# CV  07  3359

SEYBERT, J.

LINDSAY, M.

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Pall Corporation ("Pall" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of purchasers of the common stock of Pall between April 20, 2007 and August 2, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Robert Baughman, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Pall at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Pall is a New York corporation with its principal place of business located at 2200 Northern Boulevard, East Hills, NY 11548. The Company, together with its subsidiaries, manufactures and markets filtration, purification, and separation products and integrated systems solutions.

8.      (a)      Defendant Eric Krasnoff ("Krasnoff") is, and was at all relevant times, Pall's Chairman, Chief Executive Officer ("CEO") and President. He has been the Company's Chairman and CEO since July 1994.

(b)      Defendant Lisa McDermott ("McDermott") is, and was at all relevant times, Pall's Chief Financial Officer ("CFO"), Chief Accounting Officer, Vice President of Finance and Treasurer. She has been the Company's CFO since January 2006.

(c)      Defendants Krasnoff and McDermott are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

- 2 -

10.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

11.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

12.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Pall common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Pall's business, operations, management and the intrinsic

value of Pall common stock; and (ii) caused Plaintiff and other members of the Class to purchase Pall's common stock at artificially inflated prices.

13.     John Adamovich Jr. ("Adamovich") was the Company's CFO from January 1998 to November 2004. Adamovich is a non-party and is not named as a Defendant at this time.

14.     Marcus Wilson ("Wilson") was the Company's CFO from November 2004 to January 2006. Wilson is a non-party and is not named as a Defendant at this time.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Pall between April 20, 2007 and August 2, 2007, inclusive ("the Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Pall common shares were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Pall or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

- 4 -

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Pall; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     Defendant Pall describes itself as the "global leader in the rapidly growing field of filtration, separation and purification."  The Company operates in five segments: Medical, BioPharmaceuticals, General Industrial, Aerospace and Microelectronics.

22.     From July 31, 1999 to July 19, 2007, Pall issued numerous press releases announcing, among other things, its financial results and Pall filed quarterly and annual reports with the SEC on Forms 10-Q and 10-K. The Company's press releases and quarterly and annual reports filed with the

- 5 -

SEC were each materially false and misleading because Pall was overstating its reported financial results by materially understating its income tax liability. Moreover, the Company's SEC filings falsely represented that the financial statements contained therein were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and also falsely represented the Company's effective tax rate and the factors affecting the Company's effective tax rate. These material false and misleading statements remained alive and uncorrected during the Class Period.

23.     The Class Period begins on April 20, 2007. On that date, the price of Pall common stock was $40.40 per share.

24.     On May 31, 2007, Pall issued a press release announcing its financial results for the fiscal third quarter of 2007, the period ended April 30, 2007. For the quarter, the Company reported diluted earnings per share ("EPS") of $0.54 and net earnings of $67.1 million. Defendant Krasnoff, commented on the results stating in pertinent part as follows:

> Execution of our strategic plan is driving improvements to the top and bottom line. Pall's Total Fluid Management(sm) value proposition is resonating with customers. The benefits from pricing, productivity improvement and cost reduction initiatives have driven operating profit growth of 35%.
>
> Pall's broad cost reduction initiatives were a major contributor to the gross margin expansion to 49.5%. Continued improvement in the profitability of systems played a key role. We are on track to achieve further gross margin expansion in fiscal 2008 as our cost reduction and facilities rationalization initiatives continue to gain traction. Selling, general and administrative ("S,G&A") expenses again decreased as a percentage of sales falling to 30%.

With regard to the Company's outlook, Defendant Krasnoff stated:

> For the full fiscal year, we expect Life Sciences to achieve mid single-digit sales growth with Medical on the low end and BioPharmaceuticals around 10%. Pall Industrial should come in near the top end of the 5-7% growth range provided at the beginning of the fiscal year reflecting a slowdown in the Microelectronics market offset by the vitality of systems sales and the Energy marketplace generally. This adds up to low revenue growth in the fourth quarter over a very strong fourth quarter in fiscal 2006.

- 6 -

Our expectations for the full year are for gross margins for the Company to stabilize as the impact of our cost reduction initiatives grow. S,G&A is expected to be about 30% of sales. Our underlying tax rate is expected to be between 24 and 25% excluding the effects of favorable income tax related adjustments.

At mid-year we shared an expectation that earnings would modestly exceed prior guidance. Now with three quarters in the books, we expect to finish the year with strong earnings.

25.     On June 8, 2007, Pall filed its Form 10-Q with the SEC for its fiscal third quarter of 2007, the period ended April 30, 2007, which was signed by Defendant McDermott and confirmed the previously announced financial results (the "Third Quarter 10-Q"). With respect to the Company's effective tax rate, the Third Quarter 10-Q stated in pertinent part as follows:

The Company's effective tax rate for the nine months ended April 30, 2007 and 2006 was 19.0% and 36.5%. The decrease in the effective tax rate was primarily due to the refinement of prior estimates of income tax liabilities, including amounts relating to the repatriation of foreign subsidiary earnings, as well as the availability of research credits in both the United States of America and the United Kingdom. In addition, the Company recorded tax expense of $17,000 during the nine months ended April 30, 2006 related to the tax effect of the repatriation of foreign subsidiary earnings.

The Company's effective tax rate may change year to year based on recurring factors such as the geographical mix of income in tax jurisdictions that have a broad range of enacted tax rates, the timing and amount of foreign dividends, state and local taxes, the ratio of permanent items to pretax book income and the implementation of various global tax strategies, as well as nonrecurring factors.

With respect to the financial statements contained therein, the Third Quarter 10-Q represented that:

The condensed consolidated financial information included herein is unaudited. Such information **reflects all adjustments of a normal recurring nature**, which are, in the opinion of Company management, **necessary to present fairly** the Company's consolidated financial position, results of operations and cash flows as of the dates and for the periods presented herein. These condensed consolidated financial statements should be read in conjunction with the consolidated financial statements and notes set forth in the Company's Annual Report on Form 10-K for the fiscal year ended July 31, 2006 ("2006 Form 10-K"). [Emphasis added.]

26.    The statements referenced above in ¶¶24 and 25 were each materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts, among others:

(a)    that Pall was materially overstating its financial results by understating its liability for income taxes. Pall has publicly reported that it could owe more than $130 million in taxes - exclusive of interest or penalties and that its financial statements for fiscal years 1999 through 2006 and for each of the fiscal quarters ended October 31, 2006, January 31, 2007, and April 30, 2007 "should no longer be relied upon and that a restatement of some or all of those financial statements will be required";

(b)    that the Company's reported effective tax rate was materially inaccurate as the Company was materially understating its tax liability as it has now admitted; and

(c)    based on the foregoing, the Company's financial statements were not prepared in accordance with GAAP and were, therefore, materially false and misleading.

27.    On July 19, 2007, after the markets closed, Pall issued a press release announcing that the Audit Committee of its Board of Directors had commenced an inquiry into a possible material understatement of U.S. income tax payments and of its provision for income taxes in certain prior periods beginning with fiscal year ended July 31, 1999. According to the press release, the tax issues related to the taxation of certain indebtedness of the Company to a foreign subsidiary. The press release stated in pertinent part as follows:

> The matter relates to the taxation of certain indebtedness of the Company to a foreign subsidiary of the Company. The Company has notified the Internal Revenue Service and the Securities and Exchange Commission of this matter and of the Audit Committee's pending inquiry. This matter may also have resulted in the Company's failure to comply with certain terms of its debt or other agreements. The Company may need to seek waivers under those agreements, including to effectuate its intention to declare a quarterly dividend for the quarter ending July 31, 2007. The Company intends to report on the Audit Committee's inquiry as soon as practicable.

28.     In response to this announcement, the price of Pall common stock declined from $48.78 per share to $41.11 per share, over 15%, on unusually high trading volume.

29.     Then, on August 2, 2007, Pall issued a press release announcing that its financial statements for fiscal years 1999 through 2006 and for each of the fiscal quarters ended October 31, 2006, January 31, 2007, and April 30, 2007 "should no longer be relied upon and that a restatement of some or all of those financial statements will be required." Furthermore, Pall reported that the Company could owe up to $130 million in back taxes not including interest and penalties. The press release stated in pertinent part as follows:

> The amount of the understatement has not yet been finally determined, but is *material* and relates to the taxation of certain intercompany payable balances that mainly resulted from sales of products by a foreign subsidiary of the Company to a U.S. subsidiary of the Company. Under the Internal Revenue Code, these unpaid balances may have given rise to deemed dividend income to the Company that was not properly taken into account in the Company's U.S. income tax return and provision for income taxes. The Company has not finally determined the impact on the Company's provision for income taxes in any affected period, but it will vary from period to period depending on the size of the intercompany payable balances at the end of the affected fiscal quarters, among other factors. The Company's tax liability will include the amount of taxes that would have been payable with respect to any deemed dividend income in the affected periods, as well as interest on overdue amounts of taxes payable and penalties that may be assessed by the Internal Revenue Service on the eventual resolution of this matter. The Company cannot predict when its tax liability will be finally determined or whether additional matters will be identified in connection with the ongoing inquiry of the Audit Committee. *The Company believes, however, that taxes payable with respect to the intercompany payable balances described above could be in excess of $130 million, exclusive of interest and penalties.* The Company also believes that, as a result of these circumstances, *it may have one or more material weaknesses in its internal control over financial reporting*.

> As previously reported, this matter may also have resulted in the Company's failure to comply with certain terms of its debt and other agreements, and the Company plans to work with its lenders to seek waivers under those agreements as necessary.

30.     In response to this announcement, the price of Pall common stock fell from $41.11 per share to $39.90 per share, or 3%, on heavy trading volume.

- 9 -

31. The market for Pall's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Pall's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Pall common stock relying upon the integrity of the market price of Pall's common stock and market information relating to Pall, and have been damaged thereby.

32. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Pall's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

33. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Pall's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Pall and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

- 10 -

## ADDITIONAL SCIENTER ALLEGATIONS

34.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Pall, their control over, and/or receipt and/or modification of Pall's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pall, participated in the fraudulent scheme alleged herein.

35.     Moreover, during the years that Pall was materially overstating its financial results, Pall insiders, including Defendant Krasnoff, sold their personally-held Pall stock into the market.

## LOSS CAUSATION/ECONOMIC LOSS

36.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Pall's common stock price and operated as a fraud or deceit on Class Period purchasers of Pall's common stock by failing to disclose that its financial results were materially overstated because the Company was materially understating its income tax liability.  When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, Pall's common stock price fell precipitously as the prior artificial inflation came out.  As a result of their purchases of Pall's common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages under the federal securities laws.

37.     Defendants' false and misleading statements had the intended effect and caused Pall's common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $48.87 per share on July 13, 2007.

38.     As a direct result of defendants' disclosures on July 19, 2007 and August 2, 2007, Pall's common stock price fell precipitously.  These drops removed the inflation from the price of Pall's securities, causing real economic loss to investors who had purchased the Company's securities during the Class Period.

39.     The more than 18% decline in the price of Pall's common stock after these disclosures came to light was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of Pall's common stock price decline negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Pall's securities and the subsequent significant decline in the value of Pall's securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance:
### Fraud On the Market Doctrine

40.     At all relevant times, the market for Pall's common stock was an efficient market for the following reasons, among others:

(a)     Pall's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

- 12 -

(b)     as a regulated issuer, Pall filed periodic public reports with the SEC and the NYSE;

(c)     Pall regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Pall was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for Pall's common stock promptly digested current information regarding Pall from all publicly available sources and reflected such information in Pall's stock price. Under these circumstances, all purchasers of Pall's common stock during the Class Period suffered similar injury through their purchase of Pall's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking

- 13 -

statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Pall who knew that those statements were false when made.

**COUNT I**

**Violation of Section 10(b) of
the Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

46.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Pall common stock. Plaintiff and the Class would not have purchased Pall common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

47.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Pall common stock during the Class Period.

- 14 -

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Pall within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Pall, and their ownership of Pall stock, the Individual Defendants had the power and authority to cause Pall to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  August 14, 2007                    LERACH COUGHLIN STOIA
                                            GELLER RUDMAN & ROBBINS LLP


                                            _____
                                                   SAMUEL H. RUDMAN

                                            SAMUEL H. RUDMAN (SR-7957)
                                            DAVID A. ROSENFELD (DR-7564)
                                            MARIO ALBA JR. (MA-7240)
                                            58 South Service Road, Suite 200
                                            Melville, NY 11747
                                            Telephone:  631/367.7100
                                            631/367.1173 (fax)

                                            Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

ROBERT BAUGHMAN ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 4/24/07 | 100 | 40,95 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| — | — | — |
| | | |
| | | |

5.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

PALL

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

     I declare under penalty of perjury that the foregoing is true and correct. Executed this _10th_ day of ___Aug.___, 2007.

                              ROBERT BAUGHMAN

PALL