UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

IN RE PALL CORP.[1]

MEMORANDUM & ORDER
07-CV-3359 (JS)(ARL)

------------------------------------X
APPEARANCES:

For Plaintiffs:
Robert Baughman:        David A. Rosenfeld, Esq.
                        Mario Alba, Esq.
                        Samuel H. Rudman, Esq.
                        Coughlin Stoia Geller Rudman & Robbins LLP
                        200 Broadhollow Road, Suite 406
                        Melville, NY 11747

Richard J. Koop:        Catherine A. Torell, Esq.
                        Cohen, Milstein, Hausfeld &
                        Toll, P.L.L.C.
                        150 East 52nd Street, 30th floor
                        New York, NY 10022

John Artis:             Evan J. Smith, Esq.
                        Brodsky & Smith, LLC
                        240 Mineola Boulevard
                        Mineola, NY 11501

Edward J. Goodman       David Lloyd Wales, Esq.
Trusts:                 Wolf Haldenstein Adler Freeman & Herz LLP
                        270 Madison Avenue
                        New York, NY 10016

                        Denis F. Sheils, Esq.
                        Neil L. Glazer, Esq.
                        Kohn, Swift & Graf, P.C.
                        One South Broad Street, Suite 2100
                        Philadelphia, PA 19107

---

[1] In an Order dated May 28, 2008, this Court directed that all
member cases be consolidated under the caption In re Pall Corp.,
docket number 07-CV-3359 and that all future filings be made
under this docket number. Accordingly, the Clerk of the Court is
directed to mark as CLOSED the member cases 07-CV-3712,
07-CV-4110, and 07-CV-4252.

| Rhode Island    | Christopher Lometti, Esq.            |
| Laborers Pension| Ashley H. Kim, Esq.                  |
| Fund:           | Samuel P. Sporn, Esq.               |
|                 | Schoengold Sporn Laitman & Lometti   |
|                 | 19 Fulton Street, Suite 406          |
|                 | New York, NY 10038                   |

| For Defendants: |                                          |
| Pall Corporation| Lewis J. Liman, Esq.                     |
| Eric Krasnoff   | Cleary, Gottlieb, Steen & Hamilton, LLP |
| Lisa McDermott  | 1 Liberty Plaza                          |
|                 | New York, New York 10006                 |

SEYBERT, District Judge:

On August 14, 2007, Lead Plaintiff, Macomb County Employees' Retirement System ("Macomb County"), on behalf of a class of persons who purchased the common stock of Pall Corporation between April 20, 2007 and August 2, 2007 ("Class Period"), commenced this action against Pall Corporation ("Pall"); Eric Krasnoff, Pall's Chairman, Chief Executive Officer, and President; and Lisa McDermott, Pall's Chief Financial Officer since January 2006, Chief Accounting Officer, and Vice President of Finance and Treasurer ("Krasnoff" and "McDermott" collectively "Individual Defendants"). (Consol. Am. Compl. ¶¶ 14-16.) ("CAC"). Plaintiffs allege fraud and misrepresentation in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, promulgated thereunder.

Pending before this Court are Defendants' motions to dismiss the action pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities

Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b) (2006), for failure to plead fraud and scienter with the requisite particularity. For the reasons set forth herein, Defendants' motion to dismiss is DENIED.

## BACKGROUND[2]

Defendant Pall sells blood and drug filters to medical and biopharmaceutical markets through various subsidiaries. (CAC ¶ 31.) During the Class Period, Krasnoff was the Chief Executive Officer and President of Pall, and McDermott was the Chief Financial Officer. (Id. ¶¶ 15-16.) Plaintiffs are a class of persons who purchased the common stock of Pall between April 20, 2007 and August 2, 2007. (Id. ¶ 1.) They allege that Defendants engaged in a fraudulent tax scheme in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. Specifically, Plaintiffs claim the tax scheme artificially inflated Pall's stock price, causing the Plaintiffs economic loss when the artificial inflation was eventually corrected.

At the time the alleged scheme came to a head, Pall had approximately thirty-six separate subsidiaries in over thirty countries. (Defs' Reply Mem. in Supp. 7.) The two subsidiaries allegedly involved in the scheme were Medsep Corporation ("Medsep")

---

[1] The facts, as alleged by Plaintiffs, are regarded as true for the purposes of this motion.

located in Covina, California and Pall Netherlands BV ("Pall Netherlands"), located in the Netherlands. (CAC ¶ 34.) In addition, the scheme involved a manufacturing entity or branch of Pall Netherlands located in Fajardo, Puerto Rico ("Puerto Rico Sub"). (Id. ¶ 31.)

In 1998, Defendants reorganized Pall's corporate structure, allegedly in order to shield from U.S. tax authorities Medsep's profits. (CAC ¶¶ 31 n.1, 53.) Following the reorganization, the Puerto Rico Sub began manufacturing finished or near-finished blood filters. Medsep then purchased the blood filters at a markup. These transactions, termed intercompany payables and receivables, may be part of the ordinary course of business for corporations with many subsidiaries; however, under the Internal Revenue Code, intercompany payables and receivables must be settled within proscribed time periods, else they may give rise to deemed dividends.[3] In the event that a corporation receives a deemed dividend, it must report the dividend on its U.S. tax returns.

As required, Medsep reported the transaction as an intercompany payable, and Pall Netherlands as an intercompany receivable. (CAC ¶ 35.) However, some of the balances were not paid within the statutorily required period, and remained

_____

[3] As the Court discusses later in this Order, such dividends must be accounted for when calculating corporate tax liabilities under the Internal Revenue Code.

4

outstanding for approximately nine years. Accordingly, the balances became "deemed dividends" to the parent corporation. (Id.) Thus, Pall should have, but did not, report these receivables as taxable income on its U.S. tax returns. (Id. ¶ 110.) As a result, Pall had access to and use of the diverted funds, estimated to be between $398 million and $677 million, while they remained unpaid. (Id. ¶¶ 35-38.) Plaintiffs assert that Pall's misreporting and use of these funds, coupled with Pall's lower tax rate, led to an artificially inflated stock price. (Id. ¶ 130-31.) Further, the Plaintiffs allege that Pall violated Generally Accepted Accounting Practices ("GAAP") by "fail[ing] to disclose the potential contingent liabilities and significant risks and uncertainties associated with such transfer pricing practices." (CAC ¶ 110.)

On July 19, 2007, Pall issued a press release announcing that the Audit Committee of its Board of Directors had commenced an inquiry into the possible material understatement of U.S. income tax payments and of its provision for income taxes in certain prior periods beginning with its fiscal year ended July 31, 1999. (Id. ¶ 50.) On August 2, 2007, Pall announced that it would need to restate some or all of its financial statements for the fiscal years 1999 through 2006, and for each of the fiscal quarters ending October 31, 2006, January 31, 2007, and April 30, 2007. It also warned that the previously-issued statements for these periods

should no longer be relied upon. (<u>Id.</u> ¶ 51.) On January 29, 2008, Pall announced the conclusion of its Audit Committee's inquiry into the Company's underpayment of U.S. income taxes. Among other findings, the Inquiry concluded that the underpayment resulted, primarily, from the intercompany sale of products from Pall Netherlands to Medsep that were not settled through actual cash payments. (<u>Id.</u> ¶ 55.) The announcement also indicated as follows:

> On January 25, 2008, Pall terminated the employment of four employees who previously had been placed on administrative leave. These employees had principal responsibility for tax and treasury matters during substantially all of the period under review. None of them was at any time an officer of Pall Corporation.

(<u>Id.</u> ¶ 88.)

On March 28, 2008, Pall filed its Form 10-K for the fiscal year ended July 31, 2007 with the SEC, which included restated prior period financial statements. Through July 31, 2006, Defendants overstated Pall's stockholders' equity by $241,599,000, or nearly 26%. Pall's originally reported earnings for fiscal 2006 alone were overstated by $93,353,000, or 179%. For the first nine months of fiscal year 2007, Pall's reported earnings were overstated by $36,592,000, or 33%. Through July 31, 2007, Pall has recognized $277,805,000 in additional taxes, penalties and interest. (<u>Id.</u> ¶ 52.) Not surprisingly, Pall's stock price has dropped significantly. On July 19, 2007, Pall's common stock closed at $48.78. The next day, the stock closed at $41.11 per

share, shedding nearly 16% of its value. Following the announcement of the restatement on August 2, 2007, Pall's common shares closed at $38.62 per share on August 3, 2007. On August 10, 2007, following an announcement that the Company's credit rating had been lowered, common shares fell to $37.49 at the close of trading. (Id. ¶ 54.)

Essentially, Plaintiffs claim that, through the use of intercompany payables and receivables between Medsep and Pall Netherlands, Defendants intentionally or recklessly misstated Pall's tax liability, underpaid Pall's income taxes, used the diverted funds to reduce its domestic borrowing costs, and thereby artificially inflated Pall's stock to the detriment of the Class. (Id. ¶ 125.) According to Plaintiffs, this stock inflation eventually led to a sharp correction in Pall's stock price that cost shareholders significant sums of money. In support of their claims, Plaintiffs proffer statements from confidential informants. The informants indicate that Pall's senior management directed that no payments be made to settle intercompany balances arising from Medsep's purchase of products from Pall Netherlands. (CAC ¶ 40.) Additionally, an informant stated that the transfer of monies between Pall's operating units was carried out solely by the corporate office in New York. (Id. ¶ 42.) Further, the statements indicate that Pall's corporate office received financial results, including intercompany transactions, on a monthly basis. (Id. ¶

45.)  Plaintiffs finally assert that as evidence of the scheme, the Individual Defendants and other Pall insiders sold more than $47.8 million worth of their own stock in Pall.  (CAC ¶ 8.)

Defendants filed their motion to dismiss on September 19, 2008.  In response to Plaintiffs' allegations, Pall admits that it did not fulfill its obligations under the Code, and as a result, incurred a deemed dividend income of at least $237 million for the nine year period ending in April 2007.  Defendants maintain, however, that any misrepresentations, material or otherwise, were not the result of an elaborate fraudulent scheme to defraud investors.  Moreover, Defendants argue that Plaintiffs have failed to establish a <u>prima facie</u> case because they have not (1) plead fraud with the particularity required by Rule 9(b), and (2) adequately plead scienter as required by Section 10(b) and Rule 10b-5.  The Court will address each of these arguments in turn.

<u>DISCUSSION</u>

I.  <u>Defendants' Motion to Dismiss</u>

A.  <u>Standard of Review Under Rule 12(b)(6)</u>

On a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must satisfy a flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.  <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007).  The complaint must be enough to raise a right to relief

8

above the speculative level. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 1965 (2007). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." <u>Id.</u> at 1974. In applying this standard, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of plaintiff. <u>See</u> <u>Cleveland v. Caplaw Enter.</u>, 448 F.3d 518, 521 (2d Cir. 2006); <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir. 2005). Additionally, the Court is confined to the allegations contained within the four corners of the complaint. <u>Pani v. Empire</u> <u>Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998.) However, the Court may examine any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference as well as any document on which the complaint relies heavily. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002). Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201. <u>Kramer v.</u> <u>Time Warner, Inc.</u>, 837 F.2d 767,773 (2d Cir. 1991).

B.    <u>Heightened Pleading Standard Under Rule 9(b)</u>

Despite the general leniency of the 12(b)(6) standard, security fraud claims are subject to heightened pleading requirements. Rule 9(b) requires that the circumstances constituting fraud be stated with particularity. FED. R. CIV. P.

9(b).  The Second Circuit has interpreted Rule 9(b) to require the complaint to:  "1) specify the statements that the plaintiff contends were fraudulent; 2) identify the speaker; 3) state where and when the statement was made; and 4) explain why it was fraudulent."  Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004); see In re NBTY, Inc. Sec. Litig., 224 F. Supp. 2d 482, 491 (E.D.N.Y. 2002) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir. 1995)).  Additionally, the PSLRA modifies the standard Rule 12(b)(6) analysis:

> First, the PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Second, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

In re Gilat Satellite Networks, Ltd., No. 02-CV-1510, 2005 WL 2277476, at *6-7 (E.D.N.Y. Sept. 19, 2005).

C.    Internal Revenue Code Section 956 Requirements

Section 956 of the Internal Revenue Code provides that, subject to certain limitations, a U.S. shareholder of a controlled foreign corporation ("CFC") generally is required to include in gross income as a deemed dividend for each taxable year its pro rata share of the average of the amounts of earnings of the CFC

10

"invested in U.S. property" as of the close of each quarter of such year.  U.S. property is defined to include an "obligation" of a U.S. person acquired by a CFC.  Obligations include a wide variety of indebtedness.

Defendants state that determining what must be counted as an obligation, and when, is complicated, and "cannot be determined without knowing other characteristics of the balances (such as the age, nature, and previous tax treatment of the balances), together with detailed financial information about the CFC, including its current or accumulated earnings and profits, its effective tax rate in its jurisdiction, and detailed financial information concerning the U.S. parent such as any prior income the U.S. parent has recognized with respect to the CFC."  (Defs' Mem. in Supp 3 (internal quotation marks omitted).)  Based on the pleadings thus far, and without knowing more about the individual intercompany payables and receivables, it is impossible to determine when Pall was required to claim the aforementioned deemed dividends.  What is clear, however, is that Pall was required to claim the deemed dividends well before its issuance of the restatements.  At this stage, recognition of this latter issue is all that is required for the Court to render its decision on this motion to dismiss.

D.    <u>Sufficiently Pleading Fraud Under the Exchange Act</u>

Rule 10b-5 states, in part, that it is "unlawful for any person . . . [t]o make any untrue statement of a material fact or

to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. To state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must allege that the defendant 1) made misstatements or omissions of fact, 2) that were material, 3) with scienter, 4) in connection with the purchase or sale of securities, 5) upon which the plaintiff relied, 6) economic loss, and 7) loss causation. See Dura Pharm., Inc. v. Proudo, 544 U.S. 336, 341-42, 125 S. Ct. 1627, 1631, 161 L. Ed. 2d 577 (2005); Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005); Chill v. Gen. Elec. Co., 101 F.3d 263, 266 (2d Cir. 1996); Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995).

In this case, Defendants do not seriously dispute, nor can they, that Plaintiffs sufficiently have plead elements (1), (2), (4), (5), (6), and (7). Indeed, Defendants have admitted that Pall's financial statements contained materially false representations and/or omitted to disclose material information, and purchasers of Pall's common stock during the Class Period certainly could have relied on this information and suffered damages as a result of the falsity. The real issues before this Court, then, are whether Plaintiffs have sufficiently alleged (1) scienter and (2) the involvement of the Individual Defendants, with particularity.

1.  Sufficiently Pleading Scienter Under Section 10(b)
    and 10b-5

To state a claim under 10(b) and 10b-5, a plaintiff must plead that the defendant acted with "scienter," meaning "intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193, 96 S. Ct. 1375, 1381, 47 L. Ed. 2d 668 (1976). Section 21D(b)(2) of the PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Supreme Court defined the meaning of "strong inference" in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). In that case, the Court established several requirements for the district court when rendering its decision on a motion to dismiss: in a Rule 12(b)(6) motion to dismiss a Section 10(b) claim, courts must: (1) accept all factual allegations in the complaint as true, (2) consider the complaint in its entirety, and whether all the facts, when taken collectively, give rise to a strong inference of scienter, and (3) take into account plausible opposing inferences. 551 U.S. at 322-23. The Court went on to clarify:

> The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences . . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible"-it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would

> deem the inference of scienter cogent and at
> least as compelling as any opposing inference
> one could draw from the facts alleged.

Id. at 324 (internal citations and quotations marks omitted).

Since Tellabs, the Second Circuit has held that recklessness can suffice to meet pleading requirements for scienter where the complaint sufficiently alleges that the "defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital. Inc., 531 F.3d 190, 194 (2d Cir. 2008) (citing Novak v. Kasaks, 216 F.3d 300, 308-09 (2d Cir. 2000)). In other words, when pleading defendants' recklessness, a plaintiff argues "defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." Novak, 216 F.3d at 308.

To establish that Defendants acted with scienter in this case, Plaintiffs proceed under several theories: (1) Defendants benefitted in a concrete and personal way from the fraud when they sold their shares of Pall Corp; (2) As a function of their positions within the company, the Individual Defendants must have known about the incorrect information contained in the financial statements; therefore, the issuance of these incorrect financial

14

statements must have been intentional; and (3) Defendants had access to information suggesting that their statements were not accurate and failed to check information they had a duty to monitor. In asserting these theories, Plaintiffs rely on the nature of the financial misstatements, the positions of the Defendants, and the statements of several Confidential Informants.

The Second Circuit has held that a securities fraud complaint need not always disclose the identity of confidential witnesses who provide the basis for the belief that a statement was false. In re Gilat Satellite Networks, Ltd., 2005 WL 2277476, at *9 (citing Novak, 216 F.3d at 313). However, "hearsay allegations[] and "bald assertions" . . . will not defeat a Rule 12(b)(6) motion." Galvez v. Means, No. 95-CV-9479, 1996 WL 487962, at *1 (S.D.N.Y. Aug. 27, 1996) (citing Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)). When the complaint relies on statements by confidential witnesses, "Novak requires 'an examination of the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'" Id. (quoting Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 147 (3d Cir. 2004)).

2. Plaintiffs have Sufficiently Plead Scienter

The first Confidential Informant ("CI 1"), a former

director of taxation from 1982 to 1986, spoke with one of the four "tax and treasury" employees terminated after the Audit Committee investigation. (CAC ¶ 39.) The employee said that Pall's senior management stated there was "'no point to doing cash transfers' for these intercompany transactions," though "'there was an inkling' that no longer making actual cash transfers 'would be an issue.'" (<u>Id.</u> ¶ 40.) The employee further stated that "Pall was aware that the practice of not making cash transfers for intercompany transactions" was "potentially problematic," but Pall's Senior management told the employee, "[D]on't worry about it." (<u>Id.</u> ¶ 40.)

The second Confidential Informant ("CI 2"), a former Accounts Payable Manager with Medsep until 2005, and the fifth informant, a former Intercompany Accountant in a Michigan office, stated that the transfer of monies between divisions was handled exclusively by the corporate office. (CAC ¶¶ 42-3, 49.) Moreover, CI 2 stated that even though Medsep and the branch in Puerto Rico Sub both owed each other money, Medsep still owed Puerto Rico Sub "a very large amount" after balancing. (<u>Id.</u> ¶ 43). The third Confidential Informant ("CI 3"), a former Accounting Manager for Medsep, stated that Medsep's accounts receivable was handled by personnel in New York. (<u>Id.</u> ¶¶ 44-5.) The fourth Confidential Informant ("CI 4"), a Junior Treasury Analyst, stated that while he worked at Pall from 2002-2004, all wire transfers for intercompany

transactions were executed through Pall's corporate office. (Id. ¶ 46). Further, he stated that the transactions were based on instructions that he received either from the corporate accounting group, headed at the time by Defendant McDermott, or Frisch, an employee who reported to the Treasurer and Director of Tax, who in turn reported to Defendant McDermott. (Id. ¶ 47.)

Defendants argue that the Plaintiffs have failed to sufficiently plead scienter. Specifically, Defendants allege that Plaintiffs make their entire case for scienter on the basis of the CIs, and argue that the informants' statements are defective for several reasons, namely (1) Plaintiffs' allegations give insufficient detail and do not specify who is included in "Senior Management"; and (2) the Court cannot rely on statements from CI 1, as (a) he or she separated from Pall approximately thirteen years before the alleged wrongdoing began, and (b) CI 1 has no personal knowledge of the facts offered by the terminated employee; thus, the factual allegations asserted by CI 1 are hearsay.

The Confidential Informants' information, if true, would support an inference that the Defendants knew or had access to information showing that the company was engaging in improper cash and tax practices, and consequently that the financial statements and press releases presented inaccurate and misleading information. Plaintiffs also claim that because of the Individual Defendants' positions in the company as CEO and CFO and because they signed the

17

SEC filings, they knew or had access to information that their public statements were inaccurate. While scienter cannot be imputed to an executive solely because of position,

> [k]nowledge of the falsity of a company's financial statements can be imputed to key officers who should have known of facts relating to the core operations of their company that would have led them to the realization that the company's financial statements were false when issued." High level corporate officers who signed SEC filings containing the company's financial statement have a duty to familiarize themselves with the facts relevant to the core operations of the company and the financial reporting of those operations.

In re Winstar Commc'ns, No. 01-CV-3014, 2006 WL 473885, at *7 (S.D.N.Y. Feb 27, 2006) (citations omitted).[4]

Here, all of the financial statements were signed by Krasnoff as CEO, and documents from 2003 through July 2006 were signed by McDermott as Chief Accountant. (CAC ¶¶ 58-77.) Plaintiffs allege that each Defendant was "provided with copies of the documents . . . and/or had the ability to prevent their issuance or cause them to be corrected." (CAC ¶ 20.) So even if Defendants were unaware of information demonstrating that the financial statements were false, and even if the tax code is a complex subject, as Defendants argue, Plaintiffs have sufficiently

---

[4] "Under certain circumstances, we have found allegations of recklessness to be sufficient where Plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Novak, 216 F.3d at 308.

established, for purposes of surviving this 12(b)(6) motion, that Defendants should have familiarized themselves with the facts relevant to tax and accounting practices to ensure that the SEC filings they signed were truthful and accurate, at least in so far as to prevent inaccuracies of such magnitude that continued for such a prolonged period of time.

Taking all of Plaintiffs allegations as a whole, including statements by informants, the nature of the Individual Defendants' positions at Pall, the length of time of the alleged fraud and its magnitude, the Court finds that Plaintiffs have established, with the requisite particularity, an inference of fraudulent intent that is at least as compelling as any inference of non-fraudulent intent. In other words, Plaintiffs have adequately pleaded that Defendants (1) had access to information suggesting that the underlying tax liabilities and rate were inaccurate, and, (2) knew, or should have known that any reports or statements based on these numbers were not accurate, especially given the significance of the inaccuracies.[5]

---

[5] Plaintiffs also sought to establish scienter by showing that the Individual Defendants benefitted in a concrete and personal way from the purported fraud. Plaintiffs allege that Defendants made $10 million in proceeds through selling some of their personal stock during the time the financial results were misstated, which is 1999 through the end of the Class Period ("Misstatement Period"). (CAC ¶¶ 126-27.) A pleading may be sufficient "when a plaintiff alleges that corporate insiders made materially misleading statements while selling large amounts of stock at artificially high prices." In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 488 (S.D.N.Y.

Accordingly, Defendants' motion to dismiss is DENIED in its entirety.

II.   <u>Plaintiff's Motion to Amend</u>

Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should grant leave to amend freely "where justice so requires." Fed. R. Civ. P. 15(a). As a general matter, it is within the discretion of the district court to grant or deny leave to amend. <u>See</u> <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995) (citing <u>John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994)). However, outright refusal to grant leave without any justification for the refusal is an abuse of discretion and inconsistent with the spirit of the federal rules. <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). A motion to amend should be denied if and only if there has been evidence of an undue delay, bad faith, or futility of the amendment, and perhaps most important, the resulting undue prejudice to the opposing party. <u>Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir., 2001); <u>State Teachers Retirement Bd. v. Fluor Corp.</u>, 654 F. 2d 843, 856 (2d Cir. 1981).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." <u>In re</u>

_____

2004). To rebut this argument, Defendants argue that they actually increased their shares during this time period. Because the Court has found that Plaintiffs have sufficiently plead scienter through other methods, it need not opine on the merits of this argument.

<u>Kessler</u>, 05-CV-6056, 2009 WL 2603104, at *5 (E.D.N.Y. Mar. 27, 2009) (internal citations omitted).

On one hand, Plaintiff's motion to amend amounts to little more than an afterthought at the end of the memorandum in opposition to Defendants' motion to dismiss. On the other hand, in Defendants' opposition, they altogether fail to meet their burden to demonstrate that they would suffer unfair prejudice if the Court were to grant the motion to amend. Similarly, Defendants' one-sentence opposition fails to demonstrate futility of the amendment. The Second Circuit has stated that "[m]ere delay . . . absent a showing of bad faith or undue prejudice does not provide a basis for a district court to deny the right to amend." <u>State Teachers Retirement Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981). Thus, although this is Plaintiff's second attempt to amend, the Court finds that, in light of its duty to grant amendment freely, Plaintiff should have one additional opportunity to amend the Consolidated Amended Complaint. If Plaintiff seeks to amend, it shall file the Second Consolidated Amended Complaint within two weeks of the entry of this Memorandum and Order.

CONCLUSION

The Court finds that Plaintiffs have pled fraud with sufficient particularity to state a claim as required by Rule 9(b) and the PSLRA, and sufficiently pleaded a claim under Section 10(b). The Court makes these determinations in an abundance of

caution, and acknowledges that Plaintiffs' have thus far satisfied their burden by a razor thin margin. If after discovery, Plaintiffs have not further established scienter on the part of Defendants, the Court will revisit the claims on summary judgment.

For the foregoing reasons, Defendants' motion to dismiss is DENIED and Plaintiffs' motion to amend is GRANTED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September  21 , 2009
           Central Islip, New York