UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------X
                                                   :
                                                   :
                                                   :
In re PALL CORP. SECURITIES LITIGATION             :    Master File No. 2:07-cv-03359-JS-ARL
                                                   :
                                                   :
-----------------------------------------------------------------:
                                                   :
                                                   :
This Document Relates To:                          :
                                                   :
     ALL ACTIONS                                   :
                                                   :
                                                   :
                                                   :
----------------------------------------------------------------X
```

## MEMORANDUM OF LAW OF DEFENDANTS PALL CORPORATION, ERIC KRASNOFF, AND LISA MCDERMOTT IN SUPPORT OF THEIR MOTION PURSUANT TO 28 U.S.C. § 1292(B) FOR CERTIFICATION FOR INTERLOCUTORY APPEAL OF THIS COURT'S MEMORANDUM AND ORDER, ENTERED SEPTEMBER 25, 2009, DENYING THE DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT, AND FOR A STAY OF <u>THE ACTION PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL</u>

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

Attorneys for Defendants Pall Corporation, Eric
Krasnoff, and Lisa McDermott

Of Counsel:
    Lewis J. Liman
    Nancy I. Ruskin

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF RELEVANT FACTS .......................................................................... 2

I.       The Motion to Dismiss ........................................................................................... 2

II.     The Decision ........................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.       THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW .............. 5

II.     THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ....... 6

       A.      There Is Substantial Ground For Disagreement Regarding The Viability
             And The Applicability Of The "Core Operations" Theory After The
             PSLRA And *Tellabs* ................................................................................ 6

       B.      The Remaining Bases Of The Court's Conclusion Also Present Substantial
             Ground For Disagreement ......................................................................... 13

             1.      The Duration And Magnitude Of The Alleged Fraud Is Not An
                   Adequate Basis For Sustaining The Complaint And Is Not An
                   Adequate Basis For Denying The Motion For Certification For
                   Interlocutory Appeal ....................................................................... 13

             2.      The CIs' Allegations Are Not An Adequate Basis For Sustaining
                   The Complaint And Are Not An Adequate Basis For Denying The
                   Motion For Certification For Interlocutory Appeal ........................ 16

III.    AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE
       RESOLUTION OF THIS ACTION ...................................................................... 19

IV.    THE ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE
       INTERLOCUTORY APPEAL .............................................................................. 21

CONCLUSION ................................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

### Rules and Statutes

28 U.S.C. § 1292(b) ................................................................................................ *passim*

Fed. R. App. P. 5(a)(3) ............................................................................................ 4-5

Fed. R. Civ. P. 11 .................................................................................................... 19

I.R.C. § 482 ............................................................................................................. 7

I.R.C. § 6072(b) ...................................................................................................... 15

I.R.C. § 6081 ........................................................................................................... 15

I.R.C. § 6501 ........................................................................................................... 15

I.R.C. § 6662(d)(2)(B)(i) ........................................................................................ 19

I.R.C. § 6664(c)(1) .................................................................................................. 9

Private Securities Litigation Reform Act of 1995 ................................................. 9


### Cases

*Aspen Ford, Inc. v. Ford Motor Co.*,
Nos. CV-01-4677 (CPS) & CV-99-5978 (CPS), 2008 WL 163695
(E.D.N.Y. Jan. 15, 2008) ........................................................................................ 6

*Ashman v Comm'r*,
No. 15578-96, 1998 WL 188936 (U.S. Tax Ct. Apr. 22, 1998), *aff'd*, 231 F.3d 541
(9th Cir. 2000) ........................................................................................................ 15

*Atl City Elec. Co v. Gen. Elec. Co.*,
207 F. Supp. 613 (S.D.N.Y. 1962) ......................................................................... 20

*Caiafa v. Sea Containers Ltd*,
525 F. Supp. 2d 398 (S.D.N.Y. 2007) .................................................................... 16

*Chill v Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ................................................................................... 16

*Chong v Comm'r of Internal Revenue*,
No. 19501-04, T.C. Memo 2007-12, 2007 WL 109055 ......................................... 9

**Page(s)**

*City of Brockton Ret. Sys v. Shaw Group Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ................................................................................ 13

*City of N.Y. v. Beretta U.S.A. Corp.*,
401 F. Supp. 2d 244 (E.D.N.Y. 2005) ................................................................................ 21

*Collmer v. U.S Liquids, Inc* ,
268 F. Supp. 2d 718 (S.D. Tex. 2003) ................................................................................ 11

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ........................................................................................................... 19

*Cosmas v Hassett*,
886 F.2d 8 (2d Cir. 1989) ................................................................................................... 9

*Defer LP v. Raymond James Fin , Inc* ,
No. 08 Civ 3449 (LAK), 2009 WL 2971072 (S.D.N.Y. Sept. 17, 2009) ........................... 14

*Elam v Neidorff*,
544 F.3d 921 (8th Cir. 2008) ............................................................................................. 10

*Enron Corp. v. Springfield Assocs. (In re Enron Corp.)*,
Nos. 01-16034, 05-01025, 07 Civ. 1957 (SAS), & 06 Civ. 7828 (SAS), 2007 WL
2780394 (S.D.N.Y. Sept. 24, 2007) ................................................................................... 6

*Epstein v. Itron, Inc* ,
993 F. Supp. 1314 (E.D. Wash. 1998) ............................................................................... 11-12

*Friedman v. Rayovac Corp.*,
295 F. Supp. 2d 957 (W.D. Wis. 2003) .............................................................................. 12

*Globis Capital Partners, LP v. Stonepath Group, Inc.*,
241 F. App'x 832 (3d Cir. 2007) ....................................................................................... 10

*Higginbotham v Baxter International Inc* ,
495 F.3d 753 (7th Cir. 2007) ............................................................................................. 18

*In re Air Crash Off Long Island, New York, on July 17, 1996*,
27 F. Supp. 2d 431 (S.D.N.Y. 1998) .................................................................................. 5

*In re Ancor Commc'ns*,
22 F. Supp. 2d 999 (D. Minn. 1998) ................................................................................... 12

*In re Atlas Air Worldwide Holdings, Inc Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................................................................................ 11

iii

**Page(s)**

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................................................................. 14

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................................................................. 18

*In re Cell Pathways, Inc Sec Litig*,
No. 99-725 (RFK), 2000 WL 805221 (E.D. Pa. June 20, 2000) ......................... 11

*In re Doral Fin. Corp. Sec. Litig*,
563 F. Supp. 2d 461 (S.D.N.Y. 2008) ................................................................. 16

*In re Dynex Capital, Inc. Sec. Litig.*,
No. 05 Civ. 1897 (HB), 2006 WL 1517580 (S.D.N.Y. June 2, 2006) ............... 1-2, 20

*In re eSpeed, Inc Sec Littg*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006) ................................................................. 10

*In re Federated Dep't Stores Sec. Litig.*,
No. 00 Civ 6362 (RCC), 2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) ............. 11

*In re Ferro Corp. Sec. Litig.*,
Nos. 04 Civ 1440 (JRA), 04 Civ. 1589 (JRA), 2007 WL 1691358
(N.D. Ohio June 11, 2007) ................................................................................. 17

*In re Marsh & McLennan Cos., Inc Sec Litig*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................................. 14

*In re Metawave Commc'ns Corp. Sec. Litig.*,
298 F. Supp. 2d 1056 (W.D. Wash. 2003) .......................................................... 18

*In re NovaGold Res. Inc. Sec. Litig.*,
629 F. Supp. 2d 272 (S.D.N.Y. 2009) ................................................................. 10

*In re Read-Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003) .............................................................................. 9-10

*In re Trex Co , Inc Sec. Litig.*,
454 F. Supp. 2d 560 (W.D. Va. 2006) ................................................................. 17

*In re Winstar Commc'ns*,
Nos. 01 CV 3014 (GBD) & 01 CV 11522 (GBD), 2006 WL 473885
(S.D.N.Y. Feb 27, 2006) ..................................................................................... 12

*In re Xerox Corp Sec Litig*,
165 F. Supp. 2d 208 (D. Conn. 2001) ................................................................. 11

**Page(s)**

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
537 F.3d 527 (5th Cir. 2008) ............................................................................................. 2, 16, 18

*Klinghoffer v S N C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990) ............................................................................................. 5

*Latham v Matthews*,
Nos. 6:08-cv-2995 (RBH) & 6:08-cv-3183 (RBH), 2009 WL 3052223
(D.S.C. Sept. 4, 2009) .......................................................................................................... 10

*Lee v Coughlin*,
26 F. Supp. 2d 615 (S.D.N.Y. 1998) .................................................................................. 21

*LNC Invs, Inc. v. First Fid Bank*,
No. 92 Civ. 7584 (CSH), 2000 WL 461612 (S.D.N.Y. Apr. 18, 2000) ............................. 5

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007)................................................................................. 17

*Medis Investor Group v. Medis Techs., Ltd.*,
586 F. Supp. 2d 136 (S.D.N.Y. 2008) ................................................................................ 10

*Metzler Inv GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)............................................................................................. 17

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ............................................................................................. 17

*Ong v. Sears, Roebuck & Co ,*
388 F. Supp. 2d 871 (N.D. Ill. 2004)................................................................................... 12

*Palladin Partners v. Gaon*,
No. 05 Civ 3305 (WJM), 2006 WL 2460650 (D.N.J. Aug. 22, 2006)............................... 12

*Phillips v. Scientific-Atlanta, Inc.*,
374 F.3d 1015 (11th Cir. 2004) ......................................................................................... 5

*Rosenzweig v. Azurix Corp ,*
332 F.3d 854 (5th Cir. 2003) ............................................................................................. 10

*Schering-Plough Corp. v. United States*,
104 AFTR2d 2009-6157 (D.N.J. Aug. 28, 2009)................................................................ 9

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008) ............................................................................................. 16, 20

**Page(s)**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................................................................................................... passim

*Thompson v. Shaw Group Inc* ,
No. 04-1685(HEB), 2006 WL 2038025 (E.D. La. July 18, 2006) ...................................... 5

*Zucco Partners, LLC v  Digimarc Corp.*,
445 F. Supp. 2d 1201 (D. Or. 2006) ................................................................................. 18

*Zucco Partners, LLC v  Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................................ 8

## Other Authorities

Andrew B. Bernard, et al., Transfer Pricing by U.S.-Based Multinational Firms (Nat'l
Bureau of Econ. Research, Working Paper No. 12493, 2006), *available at*
http://www.nber.org/papers/w12493 .................................................................................. 7

Internal Revenue Manual § 1.2.20.1.1. (June 29, 2004) ...................................................... 8

Internal Revenue Manual § 4.10.2.2.2(1) (Aug. 1, 2007) .................................................. 15

Internal Revenue Manual § 20.1.1.2 (Feb. 22, 2008) ........................................................ 8

IRS Data Book 2008, Publication 55B, Washington, DC, Mar. 2009, *available at*
http://www.irs.gov/pub/irs-soi/08databk.pdf........................................................................ 14

IRS News Release 2006-142 (Sept. 11, 2006) .................................................................... 9

IRS Notice 2008-91, 2008-43 I.R.B. 1001 (October 27, 2008) .......................................... 7

Treasury Inspector General for Tax Administration, "Improvements in the Quality
Review Program of Large Corporate Examinations Are Needed to Demonstrate Its
Effectiveness" Sept. 2000, Reference Number: 2000-30-143, *available at*
http://www.treas.gov/tigta/auditreports/reports/200030143fr.pdf...................................... 15

Treasury Inspector General for Tax Administration, "Opportunities Exist to Improve
Large Corporate Examination Results" September 2000, Reference Number: 2000-30-
133, *available at* http://www.treas.gov/tigta/auditreports/reports/200030131fr.pdf.......... 15

The Estee Lauder Cos. Inc., Form 8-K (July 14, 2006) ...................................................... 9

Treas. Reg. § 1.451-1(a) (as amended in 1999)................................................................... 8

**Page(s)**

Treas. Reg. § 1.6662-4(d) (as amended in 2003) ............................................................... 19

Treas. Reg. § 1.6664-2(c)(2) (as amended in 2007) ........................................................... 8

Treas. Reg. § 1.6664-4(b)(1) (as amended in 2003) ........................................................... 9

Defendants Pall Corporation ("Pall" or the "Company"), Eric Krasnoff, and Lisa McDermott (together, the "Individual Defendants," and collectively with Pall, the "Defendants") respectfully submit this Memorandum of Law in support of their motion pursuant to 28 U.S.C. § 1292(b) for certification for interlocutory appeal of this Court's Memorandum and Order, entered September 25, 2009, denying the Defendants' Motion to Dismiss the Consolidated Amended Complaint (the "September 25 Order" denying dismissal of the "Complaint"). Such an appeal would substantially advance the parties' and Court's shared interest in the efficient resolution of this matter.[1] Defendants respectfully request that the Court stay this action pending the resolution of this motion and any subsequent proceedings before the Second Circuit.

## PRELIMINARY STATEMENT

Defendants seek appellate review of the September 25 Order on the basis of a controlling question of law, the outcome of which could substantially advance the resolution of this case and about which there is substantial room for disagreement among the courts. 28 U.S.C. § 1292(b) (2009). The legal question is:

> Whether, (i) after the PSLRA and *Tellabs*, a plaintiff may plead a "strong inference of scienter" by alleging that a restatement involved the "core operations" of a company and, if so, what is the scope of the "core operations" theory, and (ii) even if the "core operations" theory remains viable after the PSLRA and *Tellabs*, may the theory apply where the alleged fraud relates to back office functions regarding the establishment, settlement, and taxation of intercompany payables that are common to all multinational corporations and inherently complicated?

Although interlocutory appeal is an exceptional request that courts grant only in appropriate cases, this is, in short, just the type of case that 28 U.S.C. § 1292(b) is intended to reach. *See In re Dynex Capital, Inc. Sec. Litig*, No. 05 Civ. 1897 (HB), 2006 WL 1517580, at

---

[1]    In the September 25 Order, the Court granted Plaintiff's request for leave to further amend the Complaint *See* September 25 Order at 21   Counsel for Plaintiffs have informed Defendants' counsel that they will not file a Second Consolidated Amended Complaint during the time period permitted by the Court   Thus, the Complaint will be the final operative complaint in this case and the determination of its legal sufficiency by the Second Circuit may either terminate the litigation or reduce the issues remaining for discovery and trial

*1 (S.D.N.Y. June 2, 2006) (certifying for immediate appeal question of whether pleading corporate or collective scienter is permissible). Certification is appropriate where complicated, purely legal questions could be subject to disagreement and where appellate review of those questions could materially advance the litigation. *See, e.g., Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 531 (5th Cir. 2008) (considering on interlocutory appeal whether complaint alleged facts giving rise to "strong inference of scienter"); 28 U.S.C. § 1292(b) (2009). There is no doubt that immediate appeal of this question would speed the resolution of the case. Even if the Second Circuit declined to direct that the Complaint be dismissed with prejudice, the resolution of the issue presented by an interlocutory appeal could clarify the necessary scope of discovery, the issues and proof presented at trial, and the jury instructions. For these reasons, and the reasons set forth below, certification is appropriate.

## STATEMENT OF RELEVANT FACTS

Defendants hereby incorporate by reference the statement of facts as set forth in their Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint (the "MTD"). The following sets forth facts relevant to this motion for certification.

## I.    The Motion To Dismiss

The lawsuit arises out of Pall's determination that it understated its U.S. income tax payments and consequently its income tax provision for Fiscal Years 1999 through 2006 and for the first two quarters of Fiscal Year 2007 (the "Restatement Period"). The Class Period – the period during which the statements at issue were made – is the period from April 20, 2007 until August 2, 2007.

By motion dated September 19, 2008, Defendants moved to dismiss the Complaint, arguing that Plaintiff had failed to plead a strong inference of scienter with respect to Defendants

or, for that matter, any individual at Pall whose scienter could be imputed to the Company and who was responsible for the alleged misstatements upon which the Complaint predicated liability (that is, the third quarter 2007 financials).

In their MTD, Defendants argued that neither the fact that Pall filed a restatement nor the restatement's size or duration standing alone could give rise to a strong inference of scienter. MTD at 21. The MTD argued that none of the other allegations supported a claim of scienter: it is blackletter law that a defendant cannot be liable for fraud based on his or position in the company or because of the nature of the alleged fraud (*id* at 21-22); the CIs were not described with sufficient particularity to support the probability that they were in a position to know the information they alleged and the allegations, even if true, did not support a strong inference of scienter (*id.* at 9-16); and none of Plaintiff's allegations, whether taken together or individually, could support a strong inference of scienter. Notably, there is no allegation, from a CI or otherwise, that anyone at Pall thought that Pall was misapplying the Internal Revenue Code of 1986, as amended (the "Code"), much less that a person responsible for the financial statement at issue thought, or recklessly ignored the probability, that that financial statement was misstated.[2]

## II.    The Decision

In its September 25 Order, the Court denied the MTD. The Court stated that the Plaintiff had met its burden by a "razor thin margin" and that it had denied the MTD "in an abundance of caution" and allowed the Plaintiff leave to file a further amended complaint. September 25 Order at 21-22. In particular, the Court applied the "core operations" theory and determined,

---

[2]    The MTD also refuted a number of other arguments raised in the Complaint. In particular, it demonstrated (i) that the allegations regarding Defendants' stock sales and incentive compensation did not give rise to a strong inference of scienter (MTD at 16-20); (ii) that the theory of the Defendants' "scheme" was not actionable (because every corporate insider would have the so-called "motives" ascribed to the Defendants) and not coherent (because the Complaint failed to account for the fact that Pall could have funded its operations by borrowing in U S and lending in Puerto Rico) (*id* at 22-23); and (iii) that a number of competing non-fraudulent inferences could be drawn from the allegations of the Complaint. For example, the MTD explained that the misstatement could have arisen out of mere negligence or inattentiveness to the rigors and complexities of the Code *Id* at 24

based in part on the size and duration of the fraud, that "even if Defendants were unaware of information demonstrating that the financial statements were false, and even if the tax code is a complex subject . . . Plaintiffs have sufficiently established, for purposes of surviving this 12(b)(6) motion, that Defendants should have familiarized themselves with the facts relevant to tax and accounting practices to ensure that the SEC filings they signed were truthful and accurate, at least in so far as to prevent inaccuracies of such magnitude that continued for such a prolonged period of time." *Id.* at 18-19. The Court also relied on the alleged hearsay statement of a CI (CI 1) that he was told at some point by some unidentified person that another unidentified person had said at one time "'there was an inkling' that no longer making actual cash transfers 'would be an issue.'" *Id.* at 19, 16. The Complaint did not identify what "issue" the other employees supposedly raised; to whom the employee raised the "issue"; how it was resolved; or whether the "inkling" ever suggested that Pall was doing anything wrong.[3]

## ARGUMENT

Section 1292(b) provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b) (2009).[4] There are thus three requirements for an order to be certified for interlocutory appeal. It must involve (1) "a controlling question of law"; as to which (2) "there is

---

[3]     The Court accepted the difficulty of determining liability for deemed dividends under Section 956 of the Code: "it is impossible to determine when Pall was required to claim the aforementioned deemed dividends. What is clear, however, is that Pall was required to claim the deemed dividends well before its issuance of the restatements." September 25 Order at 11. The Court concluded that this fact was sufficient for the purposes of ruling on the MTD. This fact became apparent, however, only after months of analysis by the Company and multiple sets of external tax advisers.

[4]     In addition, Rule 5(a)(3) of the Federal Rules of Appellate Procedure provides as follows.

4

substantial ground for difference of opinion"; and (3) "an immediate appeal . . . may materially

advance the ultimate termination of the litigation." *Id.* This case easily satisfies all three criteria.

## I.     THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW

A "controlling" question of law is not a dispositive question of law.  "[A]n issue need not

necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro*,

921 F.2d 21, 24 (2d Cir. 1990) (citation omitted).  "[A]ll that must be shown in order for a

question to be 'controlling' is that resolution of the issue on appeal could *materially affect* the

outcome of litigation in the district court." *LNC Invs, Inc  v  First Fid. Bank*, No. 92 Civ. 7584

(CSH), 2000 WL 461612, at *3 (S.D.N.Y. Apr. 18, 2000) (citation omitted) (emphasis in

original).  "Certification under § 1292(b) is also appropriate where, as here, the underlying

motion raises a purely legal question about which there are no triable issues of fact." *In re Air*

*Crash Off Long Island, New York, on July 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998).

The Court's September 25 Order raises a single question of law that can be resolved on

the papers and the resolution of which would materially advance this case. *See Thompson v.*

*Shaw Group Inc.*, No. 04-1685(HEB), 2006 WL 2038025, at *1 (E.D. La. July 18, 2006) ("the

issue of whether Plaintiffs have adequately satisfied their pleading burden under the PSLRA,

Fed. R. Civ. P. 9(b), and Fed. R. Civ. P. 12(b) is hereby certified pursuant to 28 U.S.C. § 1292(b)

for immediate appeal").[5]

---

(a) Petition for Permission to Appeal      (3) If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement  In that event, the time to petition runs from entry of the amended order.

[5]     *See also Phillips v  Scientific-Atlanta, Inc.*, 374 F 3d 1015, 1016 (11th Cir  2004) (certifying for interlocutory appeal to the Eleventh Circuit the question of whether "allegations that standing alone do not give rise to a 'strong inference' of scienter under the [PSLRA] may nevertheless be aggregated to create such a finding.").

5

## II.     THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

"[S]ubstantial ground[s] for difference of opinion" may be found where "'(1) there is

conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression

for the Second Circuit.'" *Aspen Ford, Inc. v. Ford Motor Co.*, Nos. CV-01-4677 (CPS) & CV-

99-5978 (CPS), 2008 WL 163695, at *2 (E.D.N.Y. Jan. 15, 2008) (quoting *Morris v. Flaig*, 511

F. Supp. 2d 282, 317 (E.D.N.Y. 2007)); *see also Enron Corp. v  Springfield Assocs. (In re Enron*

*Corp )*, Nos. 01-16034, 05-01025, 07 Civ. 1957 (SAS), & 06 Civ. 7828 (SAS), 2007 WL

2780394, at *1 (S.D.N.Y. Sept. 24, 2007).  In this instance, the September 25 Order raises an

issue that is both difficult and of first impression for the Second Circuit and one on which there

is conflicting authority.

### A.  There Is Substantial Ground For Disagreement Regarding The Viability And The Applicability Of The "Core Operations" Theory After The PSLRA And *Tellabs*

The September 25 Order relied on the so-called "core operations" theory to impute

scienter to the Company and its executives.  Recognizing that the Company's alleged

misstatement derived from the misapplication of the rules of the Code to intercompany payables

established as a result of the sale by an offshore Pall subsidiary to a domestic Pall subsidiary, the

Court nonetheless held that "'[h]igh level corporate officers who signed SEC filings containing

the company's financial statement have a duty to familiarize themselves with the facts relevant to

the *core operations* of the company and the financial reporting of those operations.'"  September

25 Order at 18 (quoting *In re Winstar Commc'ns*, No. 01-CV-3014 (GBD), 2006 WL 473885, at

*7 (S.D.N.Y. Feb 27, 2006)) (emphasis added).

The Court's decision is of potentially sweeping scope.  Almost every company that participates in import or export activities must establish and settle intercompany payables [6] and must determine the tax consequences of such payables under U.S. and foreign law.[7]  Such tax consequences may involve "deemed dividends" of the type at issue here, as well as more general "transfer pricing" issues (which were indeed also implicated by the intercompany payables in Pall's case).[8]  In a 2006 paper on the tax aspects of transfer pricing, a group of economists identified over 160,000 U.S. companies engaged in export activities.[9]  In each such company, an error in the application of the tax rules applicable to intercompany payables, if it were large enough, would by definition gives rise to a restatement of financial results.

Thus, the Court's ruling – were it to be applied consistently – could lead to dramatic results inconsistent with the Supreme Court's narrowing of securities fraud liability in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  If the establishment and settlement of intercompany payables is a "core operation" in a multinational manufacturing corporation such as Pall, then the establishment and settlement of intercompany payables would be a "core operation" for all multinational corporations.  A large enough error in the application of the Code by any of these companies would result in a financial restatement and, under the Court's Order, a

---

[6]     During the height of the credit crisis, the IRS acknowledged the importance of intercompany payables by issuing emergency guidance that temporarily relaxed the circumstances in which such payables would give rise to deemed dividends under Section 956 of the Code.  *See* IRS Notice 2008-91, 2008-43 I.R.B 1001 (October 27, 2008)  This guidance was intended to give U.S. multinational groups greater flexibility in arranging their financial affairs during a time of great market stress.

[7]     To the extent intercompany payables arise between U.S and non-U.S. companies, as is the case here, such intercompany payables are also subject to foreign tax rules

[8]     "Transfer pricing" is an increasingly important and contentious area of tax law in the United States and around the world.  It deals with the pricing for "intercompany" transactions, that is, transactions between commonly controlled parties such as a parent corporation and its subsidiaries.  Intercompany transactions of a multinational group are subject to scrutiny by the tax authorities of each jurisdiction in which the group operates, which has led to transfer pricing being a major tax compliance issue for multinational companies   Section 482 of the Code and the regulations thereunder govern transfer pricing in the United States.

[9]     Andrew B. Bernard, et al., Transfer Pricing by U S -Based Multinational Firms, 11 (Nat'l Bureau of Econ. Research, Working Paper No  12493, 2006), *available at* http //www.nber.org/papers/w12493

7

securities fraud lawsuit. Senior corporate executives would also be forced to familiarize themselves with the details of intercompany payables – financial figures that do not even appear on the company's consolidated financial results and that frequently are irrelevant to the operations of the company[10] – and to the complex rules that apply to them on pain that the failure to do so, or an error in the application of those rules, would lead to them being haled into court on an allegation of fraud. *Cf. Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 1001 (9th Cir. 2009) (noting that inference of scienter may be drawn where "the information misrepresented is *readily apparent* . . . reporting false information will only be indicative of scienter where the falsity is *patently obvious* – where the 'facts [are] prominent enough that it would be '*absurd to suggest*' that top management was unaware of them'") (quoting *Berson v Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008) (emphasis added)).

Finally, the carefully calibrated U.S. tax rules that encourage self-reporting would be undermined.[11] Under those rules, a company that self-reports is rewarded for doing so in two potential ways. First, a taxpayer can avoid accuracy-related penalties on a return not under audit by voluntarily reporting any additional tax due on a "qualified amended return."[12] Second, even if a return is under audit, accuracy-related penalties will not be imposed with respect to any portion of an underpayment of tax for which there was "reasonable cause" and with respect to

---

[10] Instead, they appear in a company's consolidating financial statements (which are not required to be reported under the SEC's rules).

[11] *See, e g ,* Internal Revenue Manual § 20.1.1.2 (Feb. 22, 2008) (restating the universally accepted proposition that the penalties applicable under the Code "exist to encourage voluntary compliance"); Internal Revenue Manual § 1 2.20 1.1. (June 29, 2004) ("In order to make the most efficient use of penalties, the Service will design, administer, and evaluate penalty programs based on how those programs can most efficiently encourage voluntary compliance."); *cf* Treas. Reg § 1.451-1(a) (as amended in 1999) ("[I]f a taxpayer ascertains that an item should have been included in gross income in a prior taxable year, he should, if within the period of limitation, file an amended return and pay any additional tax due.").

[12] *See* Treas. Reg § 1.6664-2(c)(2) (as amended in 2007)  The qualified amended return rule is expected to apply to a portion of Pall's tax liability in this case

8

which the taxpayer acted in "good faith,"[13] a standard that can be met when the taxpayer

voluntarily discloses tax errors involving complex matters of law.[14] But, after the Court's

September 25 Order, any company considering self-disclosure in a close case would need to

consider not only the benefits of avoiding the penalty, but also the likely cost of a securities fraud

lawsuit that it would face if it determines to self-report and restate.[15] The number of self-

reporters would inevitably go down.

There is "substantial ground for difference of opinion" as to both the viability of the

"core operations" theory after the passage of the Private Securities Litigation Reform Act of

1995 ("PSLRA") and the Supreme Court's decision in *Tellabs* and whether it reaches that far.

Although the Second Circuit has not addressed the viability of the "core operations"

theory since the passage of the PSLRA,[16] the two circuit courts that have explicitly addressed the

question have held that the "core operations" theory did not survive the enactment of the

PSLRA. *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (holding that

---

[13]     *See* I R.C. § 6664(c)(1).

[14]     *See, e g ,* Treas. Reg  § 1 6664-4(b)(1) (as amended in 2003) (in determining reasonable cause and good faith, "the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability"); *Chong v  Comm'r of Internal Revenue,* No. 19501-04, T.C. Memo 2007-12, 2007 WL 109055 (MVH), at * 5 (U S Tax Ct. Jan  17, 2007) (holding taxpayers had reasonable cause with respect to portion of understatement because area of law was "deceptively complex").

[15]     As should not be surprising, many companies have disputes with the IRS regarding the proper tax treatment of intercompany transactions, and the size of such disputes is often substantial. *See, e g ,* IRS News Release 2006-142 (Sept. 11, 2006) (announcing a $3 4 billion settlement relating to a transfer pricing dispute with GlaxoSmithKline); The Estee Lauder Cos. Inc., Form 8-K (July 14, 2006) (announcing a $70 million settlement with the IRS regarding various tax issues, including a transfer pricing dispute); *Schering-Plough Corp  v  United States*, 104 AFTR 2d 2009-6157 (D N J. Aug. 28, 2009) (applying Section 956 to an intercompany transaction involving an interest rate swap)  Notably, the large tax understatements involved in the GlaxoSmithKline and Estee Lauder cases did not give rise to securities class action litigation

[16]     Prior to the passage of the PSLRA, in *Cosmas v  Hassett,* the Second Circuit suggested that a strong inference of scienter may arise from allegations relating to significant or important parts of a defendant's business 886 F 2d 8, 13 (2d Cir. 1989). There, the individual defendants were directors of a company that had reported in its financial statements and various public statements that its sales to customers in the People's Republic of China ("PRC") represented an important and growing component of its current and prospective revenues  However, the company did not report that the PRC had actually enacted import restrictions that "apparently eliminated [this] potentially significant source of income for the company."  The court concluded it could infer that the defendants were aware of these import restrictions and the effect they had on the company's public statements. *Id  Cosmas* has not been cited for that holding in the Second Circuit since passage of the PSLRA

the "core operations" method of pleading does not establish a strong inference of knowing or reckless conduct); *Rosenzweig v. Azurix Corp.,* 332 F.3d 854 (5th Cir. 2003) (allegations of misstatement regarding a core business does not support a strong inference of scienter).  Other courts have suggested similar conclusions.[17]  The Court's order could not stand under these rulings.

Moreover, a number of district courts in this Circuit and elsewhere have similarly rejected the "core operations" theory.  *See In re NovaGold Res. Inc. Sec  Litig* , 629 F. Supp. 2d 272, 304 (S.D.N.Y. 2009) ("The plaintiff attempts to impute an inference of scienter to each defendant by virtue of the fact that the alleged fraud concerned 'core' business operations, but the Second Circuit has not endorsed this theory.") (citation omitted); *In re eSpeed, Inc  Sec. Litig.*, 457 F. Supp. 2d 266, 294 (S.D.N.Y. 2006) (collecting cases and stating, "[t]o the extent that this 'core operations' method of pleading conscious misbehavior or recklessness is viable after the PSLRA, plaintiffs must provide more facts to support a strong inference that any misstatements by defendants regarding [the alleged fraud] must have been made with scienter"); *Medis Investor Group v  Medis Techs , Ltd.*, 586 F. Supp. 2d 136, 145-46 (S.D.N.Y. 2008) (noting uncertainty as to continued viability of the "core operations" theory after the PSLRA); *Latham v  Matthews*, Nos. 6:08-cv-2995 (RBH) & 6:08-cv-3183 (RBH), 2009 WL 3052223, at *21 (D.S.C. Sept. 4, 2009) (rejecting plaintiff's allegation that "it would be absurd for the Individual Defendants, in their executive positions, not to know the truth about their core business operations" and noting that "[s]uch an overarching theory of recovery runs counter to

---

[17]     In *Elam v  Neidorff*, 544 F.3d 921, 926-27, 929-30 (8th Cir  2008), the Eighth Circuit noted the holdings of *Read-Rite* and *Rosenzweig* and questioned the continued viability of the "core operations" theory, but ultimately determined that it need not reach the issue because the plaintiffs had not pled facts sufficient to justify an inference even if one were available as a matter of law  *See also Globis Capital Partners, LP v  Stonepath Group, Inc* , 241 F. App'x 832, 836 (3d Cir. 2007) ("Nor does the fact that the faulty report concerned Stonepath's core financial metric change this conclusion ") (opinion not precedential)

the purposes of the [PSLRA]") (citation omitted); *Collmer v. U.S  Liquids, Inc* , 268 F. Supp. 2d

718, 754 (S.D. Tex. 2003) (PSLRA prohibits imputing knowledge of core operations "without

some additional facts such as exposure to content-identified internal corporate documents (and

who drafted them, who received them, or how plaintiffs learned of them) or specific

conversations or attendance at specified management or board meetings dealing with such

problems").

Furthermore, even assuming that the "core operations" theory remains viable, there is

conflicting authority regarding its scope.  Some courts have held that an operation is core if it

involves the company's most significant initiative or its only product.  *See, e.g , In re Atlas Air*

*Worldwide Holdings, Inc  Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004) ("Acquiring and

hiring out cargo planes pursuant to ACMI contracts are the activities that constitute the core

operations of Atlas Air."); *In re Xerox Corp. Sec. Litig.*, 165 F. Supp. 2d 208, 223 (D. Conn.

2001) (scienter adequately alleged because, "[t]he problems Xerox was having, the plaintiffs

allege, affected the company's 'core operations' and jeopardized the success of the company's

most significant initiative at that time"); *In re Cell Pathways, Inc. Sec  Litig.*, No. 99-725 (RFK),

2000 WL 805221, at **1, 7 (E.D. Pa. June 20, 2000) (misrepresentations concerned drug

company's only drug product).  By contrast, other courts have held that the "core operations"

theory requires an allegation that the misstated or omitted facts were "'essential to the survival'

of the compan[y]."  *In re Federated Dep't Stores Sec  Litig* , No. 00 Civ 6362 (RCC), 2004 WL

444559, at *5 (S.D.N.Y. Mar. 11, 2004) (holding that because misrepresentations concerned

"one financial factor of a subsidiary representing approximately 10% of [subsidiary's] total

assets," and this factor was "not 'essential' to the survival of [the company]," knowledge of

fraud could not be imputed to defendants); *see Epstein v. Itron, Inc.*, 993 F. Supp. 1314, 1317

11

(E.D. Wash. 1998) (misrepresentations involved matters "essential to the survival of [the company]").

Finally, some courts have required allegations that the defendant was closely involved in the company's "day-to-day operations" by attending key meetings and receiving relevant data, *In re Winstar Commc'ns*, Nos. 01 CV 3014 (GBD) & 01 CV 11522 (GBD), 2006 WL 473885, at *7 (S.D.N.Y. Feb 27, 2006) (finding that "knowledge of [irregularities relat[ing] to accounting practices that are sufficiently critical to the core operations of the company] may be imputed to the company's officers and directors who are involved in the day-to-day operations of the company"); *Palladin Partners v. Gaon*, No. 05 Civ 3305 (WJM), 2006 WL 2460650, at *12 (D.N.J. Aug. 22, 2006) (granting motion to dismiss where the plaintiff had failed to allege that all but one of the individual defendants had adequate involvement in the company's day-to-day operations),[18] while other  courts appear to assume that the inference may apply to any "key officers." *See, e.g., In re Ancor Commc'ns*, 22 F. Supp. 2d 999, 1005 (D. Minn. 1998) ("Facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers.").

Plainly, there is conflicting authority on the viability and applicability of the "core operations" theory and the question is a difficult one and of first impression.  The issue cries out for resolution by the Second Circuit.

---

[18]     *See also Ong v  Sears, Roebuck & Co* , 388 F  Supp  2d 871, 903 (N.D. Ill. 2004) (noting dispute as to whether scienter could be inferred from defendant's position in a company and concluding that plaintiff had failed to allege certain defendants' participation in specific meetings that would have put them on notice of the alleged misstatements); *Friedman v  Rayovac Corp* , 295 F  Supp  2d 957, 995 (W.D. Wis  2003) (stating that the inference "that officers and directors are aware of the corporation's 'core business matters'     relies on a 'must have known' logic that the [Seventh Circuit] has rejected even under Rule 9(b)")

### B.  The Remaining Bases Of The Court's Conclusion Also Present Substantial Ground For Disagreement

In denying the MTD, the Court also relied, in part, on "the length of time of the alleged fraud and its magnitude" and "statements by informants."  Neither of these bases for the Court's September 25 Order provides an independent basis for denying the MTD or provides justification for denying the motion for interlocutory review.  The Court did not view these as independent bases – the Court appropriately recognized that the allegations were intertwined and had to be considered "as a whole" (September 25 Order at 19) and, even then taking all of those allegations as a whole, only denied the MTD "in an abundance of caution" and "by a razor thin margin." *Cf City of Brockton Ret. Sys  v  Shaw Group Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) ("none of the matters cited by plaintiffs admits of an inference of fraud.  Plaintiffs argue, however, that zero plus zero plus zero plus zero plus zero adds up to something.  In this, its arithmetic is as faulty as [the defendant]'s was.").  Nor do any of these issues meaningfully distinguish this case from any other where there is a sizable tax error and the tax department is alleged to be a core operation.

### 1.  The Duration And Magnitude Of The Alleged Fraud Is Not An Adequate Basis For Sustaining The Complaint And Is Not An Adequate Basis For Denying The Motion For Certification For Interlocutory Appeal

The Court concluded that the duration and magnitude of the alleged fraud supported an inference of scienter, ruling the Defendants "should have" familiarized themselves with the complexities of the tax treatment "at least in so far as to prevent inaccuracies of such magnitude that continued for such a prolonged period of time."  September 25 Order at 19.  This conclusion does not provide an independent basis for sustaining the Complaint or provide grounds for denying the motion for interlocutory review.

In the first instance, this could not be a stand-alone basis for denying the MTD. We have

not identified a single case in which a court in this Circuit has held that the magnitude and

duration of an alleged fraud *can* provide a sufficient basis for a strong inference of scienter. *See*

*Defer LP v. Raymond James Fin., Inc.*, No. 08 Civ 3449 (LAK), 2009 WL 2971072 (S.D.N.Y.

Sept. 17, 2009) ("alleging a large fraud on its own does not carry plaintiff's burden to allege

scienter with particularity"); *In re Marsh & McLennan Cos , Inc. Sec. Litig*, 501 F. Supp. 2d

452, 483 (S.D.N.Y. 2006) ("by themselves, general allegations regarding the magnitude of the

fraud or the organizational role of a defendant are insufficient to raise a strong inference of a

defendant's scienter"); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005)

("Although several courts in this circuit have found the magnitude of a fraud supported

plaintiffs' allegations of conscious misbehavior or recklessness, it is clear that 'the size of the

fraud alone does not create an inference of scienter'") (quoting *In re WorldCom, Inc Sec Litig*,

No. 02 Civ 3288 (DLC), 2003 WL 21488087, at *7 (S.D.N.Y. June 25, 2003)). Indeed, many

courts have refused to infer scienter even in the face of a series of substantial misstatements. *See*

*BISYS*, 397 F. Supp. 2d at 447-48 (finding that allegations that revenue was inflated by more

than 20% during a four-year period insufficient to infer scienter).

More important, the duration and magnitude of the error does not make this case

exceptional or, for that matter, take it out of the run-of-the-mill sizable tax error cases (of which

there are many[19]). It is routine that corporations, in preparing their tax returns, will take a single

position with respect to a tax issue and maintain that position over a period of years. Tax returns

---

[19]       For example, the IRS Data Book for 2008 indicates that 76 percent of all audited tax returns of large
corporations (*i e* , corporations with assets of $10 million or more) were the subject of adjustments and that the
average additional tax assessed in a field audit per return was approximately $2 7 million  The IRS Data Book also
indicates that accuracy-related penalties were assessed 3355 times in 2008 for understatements of corporate income
tax, resulting in approximately $572 million in penalties  *See* IRS Data Book 2008, Publication 55B, Washington,
DC, Mar 2009, at 24, 42, *available at* http://www irs gov/pub/irs-soi/08databk pdf

are not routinely audited by the tax authorities immediately after they are filed (if they are

audited at all), and thus there is generally a gap of several years between the time that an error is

made with respect to a position on a return and the time that the error may be discovered upon

audit.[20]  Indeed, an audit of a significant corporation typically does not begin until over a year

after a return is made available and is typically not completed until 18 months or more after that

(or nearly 3½ years after the end of the relevant tax year in the case of a typical large

corporation). [21]  Moreover, under certain circumstances, taxpayers have a duty of consistency in

connection with their tax reporting.[22]   It would thus not be unusual for a company such as Pall,

which took an erroneous tax position in one year, to have the effect of that error carried forward

for a number of years.  Tax adjustments are multiyear events and a company which is required to

---

[20]      The Code requires that taxes be assessed and collected within a certain time period  Generally, the
assessment must be made within a three-year period beginning with the date a return is filed. *See* I.R.C. § 6501.  If
the amount of tax that is omitted from a tax return is substantial, however, the IRS has six years to assess the tax on
audit.  *See* I.R C  6501(e)  For a fraudulent return or when no return was filed, the deficiency can be assessed at any
time.

[21]      Internal Revenue Service guidelines recommend that a corporate audit be completed within 27 months of
the filing of a tax return, which itself generally happens 8½ months after the close of the relevant tax year in the case
of a large corporation. *See* Internal Revenue Manual § 4.10 2 2.2(1) (Aug. 1, 2007) (recommendation as to audit
start date); I R C  § 6072(b) (generally requiring a corporation to file a tax return by the 15th day of the third month
after the close of its tax year); I.R C  § 6081 (providing for a six-month return filing extension)  A 2000 report by
the U.S. Treasury Inspector General for Tax Administration found that examinations of the tax returns of corporate
taxpayers with assets over $10 million did not, on average, begin until 388 days after the returns became available to
be examined.  *See* Treasury Inspector General for Tax Administration, "Opportunities Exist to Improve Large
Corporate Examination Results" September 2000, Reference Number: 2000-30-133, *available at*
http //www.treas.gov/tigta/auditreports/reports/200030131fr.pdf  A further report noted that audits of large
corporate taxpayers in the IRS's Coordinated Examination Program ("CEP") require 18 months or more to
complete. *See* Treasury Inspector General for Tax Administration, "Improvements in the Quality Review Program
of Large Corporate Examinations Are Needed to Demonstrate Its Effectiveness" Sept  2000, Reference Number:
2000-30-143, *available at* http://www treas gov/tigta/auditreports/reports/200030143fr pdf

[22]      The so-called "doctrine of consistency" or "duty of consistency" prevents a taxpayer from taking one
position in one tax year, and a contrary position in a later tax year after the statute of limitations has run on the first
year. *See, e g., Ashman v  Comm'r,* No. 15578-96, 1998 WL 188936, at *2 (U.S  Tax Ct. Apr  22, 1998) ("duty of
consistency   .  is an equitable doctrine that prevents a taxpayer from adopting a position for a particular year and,
after the period of limitations has expired for that year, adopting a contrary position that affects his or her tax
liability for an open year"), *aff'd,* 231 F.3d. 541 (9th Cir  2000).

correct its return for one year as a result of an error applied to routine conduct will likely have to

correct its returns for other years.[23]

### 2. The CIs' Allegations Are Not An Adequate Basis For Sustaining The Complaint And Are Not An Adequate Basis For Denying The Motion For Certification For Interlocutory Appeal

Nor does the allegation that a CI (CI 1) who was employed at Pall from 1982 to 1986 was

told at some point by some tax and treasury employee that some unnamed member of senior

---

[23]    And since the U.S. Supreme Court's 2007 decision in *Tellabs*, the strength of the inference, if any, created by "duration and magnitude" or "should have known" allegations is even more uncertain  Under *Tellabs*, courts *must* weigh inferences of nonfraudulent intent against any inference of fraudulent intent (presumably including any inferences of fraudulent intent that may be drawn from the magnitude and duration of the alleged fraud)  Applying this weighing of the inferences in *In re Doral Fin  Corp  Sec  Litig*, Judge Rakoff concluded that scienter could not be imputed to an outside accountant who failed to discover a fraud that was perpetrated over four years and resulted in a total of *$920 million* in overstated income, and *$3 3 billion dollars* in understated debt because – despite the magnitude and duration of the fraud – competing inferences defeated the allegations of scienter. 563 F  Supp  2d 461, 466 (S D.N Y. 2008) ("it is impossible to draw a strong inference of PwC's scienter from either the length or extent of the fraud, or both, because the competing inference that PwC was also tricked by Doral is far more compelling")

Allegations that the Defendants "should have" known of misstatements or "should have" pursued additional information that may have revealed fraud is insufficient to support an allegation of scienter  *See Caiafa v Sea Containers Ltd*, 525 F. Supp. 2d 398, 412 (S.D.N.Y. 2007); *Doral*, 563 F. Supp. at 466 ("At most, the confidential informant's information may raise an inference that PwC was negligent in not following up on such discussion, but it certainly does not show the conscious turning away from the true facts required for [scienter] "); *Chill v  Gen  Elec  Co*, 101 F 3d 263, 270 (2d Cir. 1996) ("Fraud cannot be inferred simply because [defendant] might have been more curious or concerned about the activity"). *See also Ind  Elec  Workers' Pension Trust Fund IBEW v  Shaw Group, Inc*, 537 F.3d 527, 535 (5th Cir. 2008) (rejecting attempts to plead scienter, stating "pleading[s] of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the company" and rejecting the plaintiff's contention that the defendant must have known because of his "hands-on management style" and statement that "there is nothing in this company that I don't know") (citation omitted)

Here, there are a number of compelling competing inferences  The Court acknowledged that the tax code may be complex (September 25 Order at 18), and from the fact of that complexity it is reasonable to expect that the CEO and CFO of a major multinational company relied on in-house tax experts and/or independent auditors to advise them of any tax issues relating to complicated Code provisions.  It is reasonable to infer that they may have been fed faulty information from below. *See Teamsters Local 445 Freight Div  Pension Fund v  Dynex Capital Inc*, 531 F.3d 190, 197 (2d Cir. 2008). It is reasonable to infer that absent indication of tax problems from any tax expert (which the Complaint fails to allege was ever provided), that the Individual Defendants could not have suspected – far less known – that the financial statements were inaccurate.

Finally, for the purposes of conducting this weighing, the Court should consider the magnitude of the corporate benefit conferred by the alleged fraud – a much smaller amount than the magnitude of the alleged fraud (alleged in the Complaint to be between $398 million and $677 million, Complaint ¶¶ 35-38)  Indeed, the accounting error described in the Complaint provided the Company with, at most, a minimal benefit: by keeping the money in the U.S  subsidiary, Pall allegedly was able to save itself the cost of borrowing cash in the United States  This incremental benefit – minor, if even appreciable – is further reduced by the benefit Pall would have accrued by lending cash in Puerto Rico, and demonstrates the weakness inherent in an analysis that takes into account the magnitude of the alleged fraud but not the magnitude of the purported benefit

management had at some point said that there was "an inkling" that no longer making actual cash

transfers "would be an issue" provide a basis for denying the motion for interlocutory review.

This allegation[24] also was not sufficient to give rise to the strong inference of scienter necessary

to sustain the Complaint or to defeat this motion for certification.

CI 1's statements were based on hearsay and thus should be disregarded.[25] Even if they

were based on personal knowledge rather than on the statements of some unidentified "friend,"

they would fall far short of establishing the requisite strong inference of scienter on the part of

anyone responsible for issuing the allegedly fraudulent statement at issue here. There is no

allegation that anyone thought the financial statement was in error, no allegation that any of the

persons responsible for the single financial statement at issue in this case thought that there was

any practice that was in error, no allegation that anyone ever thought or said that there were

errors on Pall's tax returns, and no allegation regarding what the "issue" or "potential problem"

was or how the "inkling" was resolved. *See Tellabs*, 551 U.S. at 325-26 (noting that courts may

---

[24]    The allegations from the other CIs do not come close to demonstrating that any individual responsible for the financial statements in 2007 was aware that nonpayment of the cash transfers had any tax implications, or that these tax implications caused Pall's financial statements to be materially misleading. In particular, CIs 2-5 recite routine, innocuous "facts" about the location of Pall's operations (*i e*, the "corporate office") or the mere existence of an intercompany payable account. The fact that Plaintiff provides a surfeit of detail about the CIs does not make up for the fact that the detail is wholly innocuous *See In re Ferro Corp Sec Litig*, Nos. 04 Civ 1440 (JRA), 04 Civ. 1589 (JRA), 2007 WL 1691358, at *12 (N D. Ohio June 11, 2007) ("In essence, Plaintiff attempts to persuade the Court that the sheer number of confidential sources overcomes the weaknesses in the statements themselves "); *Metzler Inv GMBH v Corinthian Colleges, Inc*, 540 F.3d 1049, 1069 n 13 (9th Cir 2008) ("The problem for Metzler is not that the confidential witnesses are inadequately identified - the problem is that these witnesses do not convey information sufficient to support the strong inference of scienter that the PSLRA requires ") Therefore these allegations also fail to establish scienter.

[25]    CI 1's statements should be disregarded because they are based on hearsay and are not based on the personal knowledge necessary to establish the reliability of a confidential source *See, e g*, *Malin v XL Capital Ltd*, 499 F. Supp.2d 117, 139 n.17 (D Conn 2007) ("These allegations are based on hearsay and, therefore, do not meet the PSLRA requirement that confidential witnesses' allegations must be based on personal knowledge ") (citation ommited); *In re Trex Co, Inc Sec Litig*, 454 F. Supp 2d 560, 573 (W.D. Va 2006) ("Because the confidential witness must have personal knowledge, the testimony cannot be based on hearsay."). Nor does the Complaint otherwise provide any information that would establish that the "friend" relied on by CI 1 was even in a position to know any of the information attributed to him, and in particular, whether anyone responsible for the allegedly fraudulent misstatement was aware that an issue related to intercompany payables would give rise to tax issues that would impact Pall's financial statements *See Novak v Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (unnamed sources must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.")

consider the inferences to be drawn from what a complaint *fails to allege*).  On its face, the

allegation cannot give rise to a strong inference of scienter that a Pall employee responsible for

the third quarter financial statement thought it was in error.  *Id.* at 322-23; *see In re Bristol-*

*Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 562 (S.D.N.Y. 2004) ("Defendants alleged

'inkling,' which is a 'hint,' 'suggestion' or 'slight indication,' . . . certainly does not constitute

strong circumstantial evidence of conscious misbehavior or recklessness"). [26]

In addition, once again, the theory is not independent of the claim that the tax department

of a multinational corporation is a core operation whose errors, by definition, can give rise to a

securities fraud lawsuit.  In every multinational corporation, the tax department is required to

make complex tax judgments – that is the nature of tax judgments. [27]  A tax department is

required – on an everyday basis – to make judgments regarding how the Internal Revenue

Service will apply the Code and how its position will fare if challenged in court or

administratively.  Some corporations will take exceedingly conservative positions; others will

---

[26]     Established case law underscores the conclusion that the CIs' allegations could not support a strong inference of scienter  As the Seventh Circuit cautioned most directly in *Higginbotham v  Baxter International Inc* , courts must view CIs skeptically because anonymity "frustrates" the weighing of competing inferences that *Tellabs* directs.  495 F.3d 753, 757 (7th Cir  2007).  "Perhaps these confidential sources have axes to grind.  Perhaps they are lying  Perhaps they don't even exist."  *Id* , *see also Ind. Elec  Workers' Pension Trust Fund IBEW*, 537 F.3d at 535 (noting that confidential sources "afford no basis for drawing the plausible competing inferences required by *Tellabs*," and concluding that "[f]ollowing *Tellabs*, courts must discount allegations from confidential sources.")  As noted above, *see supra* note 25, CI 1's statements are even more problematic because they are based on hearsay.  Likewise, courts have viewed self-corroborative CIs – as in the Complaint, where to the extent any of the CIs' allegations are corroborated at all, they are corroborated only by other CIs – with great skepticism  *In re Metawave Commc'ns Corp  Sec  Litig* , 298 F. Supp  2d 1056, 1070 (W.D. Wash. 2003) ("[A] shared opinion among confidential witnesses does not necessarily indicate either falsity or a strong inference of scienter if the allegations themselves are not specific enough "); *Zucco Partners, LLC v  Digimarc Corp* , 445 F. Supp. 2d 1201, 1208 (D. Or. 2006) ("shared opinion does not necessarily indicate either the falsity of or a strong inference of scienter if the allegations themselves are based on hearsay, rumor or speculation").

[27]     Indeed, as described in the MTD, it is not enough, in assessing the potential for a deemed dividend tax liability, simply to know that a balance is owed from a controlled foreign corporation to its U S  parent or a member of the parent's affiliated group.  Rather, a taxpayer must also determine (among other things), how long the balance has been outstanding, whether the period for which it has been outstanding exceeds the ordinary payment terms for the transactions from which it arose, the amount of any deemed dividend amounts included in the parent's income in prior years in respect of the balance; the amount of foreign taxes paid by the controlled foreign corporation; and the amount of the controlled foreign corporation's earnings, all determined under U.S. tax principles

take more aggressive positions.  But the tax code does not penalize a corporation for taking such

a position – any more than a Court would prohibit another litigant from taking a nonfrivolous,

but ultimately erroneous, position of law.  *See* Fed. R. Civ. P. 11.  Indeed, under the Code,

accuracy-related penalties will not be imposed in respect of an understatement of tax for which a

taxpayer has "substantial authority."[28]  Thus, without conceding that anyone expressed any

contemporaneous doubt regarding Pall's tax position, it would not be unusual in a tax department

of a large corporation for an employee to express a doubt about one or another tax position of the

corporation or for the corporation to continue to take that tax position notwithstanding that

doubt.  Such "inklings" and identification of "potential problem[s]" are the consequences of

healthy deliberation about the propriety of a corporation's tax position; they are not the

hallmarks of fraud or other conduct that may be subject to tax penalties (under the Code), much

less the hallmarks of securities fraud.  Thus, the allegation from a CI that someone told another

person at some unspecified time that there was an "inkling" of a "potential problem", even if

credited, does not meaningfully distinguish this case from any other in which there is a tax error,

large or small, or provide a basis to defeat the motion for certification.

## III.   AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE RESOLUTION OF THIS ACTION

Section 1292(b) certification is intended to avoid unnecessary expense and delay in

reaching the ultimate termination of litigation.  *Coopers & Lybrand v  Livesay*, 437 U.S. 463

(1978).  Complex putative securities class actions may be particularly well suited to interlocutory

appeal because they turn on complicated legal questions and, if not resolved (or limited) at the

pleading stage, will involve prolonged, expensive discovery and class certification proceedings.

Indeed, one of the seminal securities law decisions issued by the Second Circuit in recent years –

---

[28]     *See* I R C. § 6662(d)(2)(B)(ı) and Treas. Reg  § 1.6662-4(d) (as amended in 2003).

a case relied upon by this Court in the September 25 Order – was issued on interlocutory appeal of the District Court's decision denying the defendants' motion to dismiss. *See Dynex*, 531 F.3d at 194.

An immediate appeal of the September 25 Order would materially advance the resolution of this action by avoiding piecemeal litigation, duplication of effort, and unnecessary and costly discovery and motion practice.  If the September 25 Order is not certified for interlocutory appeal, and is dismissed on summary judgment or reversed after the conclusion of the trial, the resources spent on the intervening discovery, motion practice, and class certification proceedings will have been unnecessary. *See In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ 1897 (HB), 2006 WL 1517580, at \*3 (S.D.N.Y. June 2, 2006) ("My denial of Dynex's motion to dismiss turned on this question, and substantial resources may be expended in vain both by the parties and this Court if my initial conclusion proves incorrect.  Therefore, Dynex has satisfied the requirements of 28 U.S.C. § 1292(b).").  The potential waste of time and resources could easily be avoided if Defendants are granted an interlocutory appeal of the September 25 Order.  This Court should allow an interlocutory appeal because it would serve the interest of judicial economy and materially advance the ultimate resolution of this litigation.

Resolution of this case would also be advanced if the Second Circuit affirms this Court. Affirmance of the September 25 Order would reduce uncertainty concerning these legal issues that could otherwise impede the parties' efforts to make targeted discovery demands and strategic decisions. *See Atl. City Elec. Co  v. Gen. Elec. Co.*, 207 F. Supp. 613, 620 (S.D.N.Y. 1962) (granting certification where immediate appeal could affect "the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort.").

Accordingly, Defendants respectfully request that the Court amend the September 25 Order to include the requisite findings of 28 U.S.C. § 1292(b) to enable Defendants to seek an immediate appeal.

## IV. THE ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL

Finally, Defendants submit that proceedings in this Court should be stayed pending the Court's decision on this motion and any subsequent proceedings in the Second Circuit. The Court has discretion to stay proceedings pending resolution of an interlocutory appeal, 28 U.S.C. § 1292(b) (2009), and such a stay is warranted here. Continued litigation of these claims before this Court would require significant expenditure of time and resources of the parties and the Court. The Second Circuit, however, may issue an opinion that substantially alters – or altogether rejects – the operative claims. Thus, discovery directed at terminated claims would be wasteful and contrary to the goals – immediate and efficient resolution of disputed issues – that interlocutory appeal is intended to foster. A stay should therefore be granted. *See City of N Y v Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 298 (E.D.N.Y. 2005) (certifying order for interlocutory appeal and staying action involving immunity defense); *Lee v Coughlin*, 26 F. Supp. 2d 615, 638 (S.D.N.Y. 1998) (certifying order for interlocutory appeal and granting stay).

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court certify the

September 25 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay further

proceedings pending the resolution of this motion and any subsequent proceedings in the Second

Circuit.

Dated: New York, New York
      October 9, 2009

                 Respectfully submitted,

                 CLEARY GOTTLIEB STEEN & HAMILTON LLP

                 By: _____

                    Lewis J. Liman
                    Nancy I. Ruskin

                    One Liberty Plaza
                    New York, New York 10006
                    Telephone:  (212) 225-2000
                    Facsimile:  (212) 225-3999

                    Attorneys for Pall Corporation, Eric Krasnoff, and
                    Lisa McDermott

Of Counsel:
    Kristofer W. Hess
    Timothy M. Haggerty
    Sue H. Rhee
    Zoe Segal-Reichlin
    Mirna Zwitter-Tehovnik