UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ | x |  |
| In re PALL CORP. SECURITIES LITIGATION | : : : | Master File No. 2:07-cv-03359-JS-GRB CLASS ACTION |
| _____ | : : |  |
| This Document Relates To: | : : : | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR |
| ALL ACTIONS. | : : x | FINAL APPROVAL OF SETTLEMENT AND PLAN OF DISTRIBUTION OF SETTLEMENT PROCEEDS |
| _____ |  |  |

787386_1

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     HISTORY AND BACKGROUND OF THE ACTION ..............................................5

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE APPROVED BY THE COURT..................................5

        A.      The Law Favors and Encourages Settlements .........................................5

        B.      The Settlement Is Procedurally Fair ...................................................7

        C.      The Second Circuit's Standards Governing the Substantive Fairness of
                Class Action Settlements ................................................................8

        D.      The Settlement Satisfies the Second Circuit Criteria for Approval......................9

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Justifies the Settlement ....................................................9

                2.      The Reaction of the Class to the Settlement ..............................10

                3.      The Stage of the Proceedings and Discovery Completed..........................11

                4.      The Risk of Establishing Liability ........................................12

                5.      The Considerable Risk of Establishing Damages.................................14

                6.      The Risks of Maintaining the Class Action Through Trial......................15

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation.......................16

                8.      The Ability of the Defendants to Withstand a Greater Judgment.............17

IV.     THE PLAN OF DISTRIBUTION OF THE SETTLEMENT FUND IS FAIR
        AND REASONABLE AND SHOULD BE APPROVED BY THE COURT .................18

V.      CONCLUSION................................................................................20

787386_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)...................................................................18

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) .................................................................15

*Carpe v. Aquila, Inc.*,
  No. 02-0388-CV-W-FJG, 2005 WL 1138833
  (W.D. Mo. Mar. 23, 2005)....................................................................15

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..............................................................7, 11

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).........................................................*passim*

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976).............................................................................13

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
  (S.D.N.Y. Oct. 24, 2005) ....................................................................10

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987).....................................................16

*In re Alloy, Inc., Sec. Litig.*,
  No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
  (S.D.N.Y. Dec. 2, 2004).........................................................................7

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................12, 18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
  (S.D.N.Y. Apr. 6, 2006)...................................................................13, 17

- ii -

787386_1

**Page**

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
(E.D.N.Y. Nov. 15, 2005) ................................................................................6

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........................................................11, 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).............................................................................15

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007
(S.D.N.Y. May 13, 2011)...................................................................................7

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................8, 19

*In re Holocaust Victim Assets Litig.*,
413 F.3d 183 (2d Cir. 2001).............................................................................19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
(S.D.N.Y. Sept. 29, 2003).............................................................................14, 16

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................6, 7, 8, 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423
(S.D.N.Y. Dec. 20, 2007)...................................................................................8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................5

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) ........................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997)...........................................................*passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093
(S.D.N.Y. May 1, 2008)........................................................................10, 11, 17, 18

- iii -

787386_1

**Page**

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
   (S.D.N.Y. Nov. 7, 2007) ............................................................................. *passim*

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................ 18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)......................................................................... 17

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ............................................................... 15

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................ 18

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)........................................................................... 5

*Kaufman v. Motorola, Inc.*,
   No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
   (N.D. Ill. Sept. 21, 2000) ............................................................................ 15

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) .................................................................. 13

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................17, 18, 19

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ............................................................... 9

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).....................................................................6, 16

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982)........................................................................ 11

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................9, 10

**Page**

*Taft v. Ackermans*,
   No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
   (S.D.N.Y. Jan. 31, 2007)...................................................................................6

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004)................................................................................12

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...........................................................................5, 16

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)...............................................................................6

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008)............................................................5, 6

*Zerkle v. Cleveland-Cliffs Iron Co.*,
   52 F.R.D. 151 (S.D.N.Y. 1971).......................................................................13

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23(b)(3).................................................................................................1, 3
   Rule 23(e)..................................................................................................1, 3, 5

## SECONDARY AUTHORITY

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
   §11.45.............................................................................................................11

787386_1

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Macomb County Employees' Retirement System, by and through its counsel ("Lead Counsel"), respectfully moves this Court for an order approving the proposed settlement of the above-captioned class action (the "Action") and approving the proposed Plan of Distribution of the settlement proceeds, each of which this Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated August 20, 2012 (the "Preliminary Approval Order").

## I.    PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Amended Settlement Agreement dated May 16, 2012 (the "Stipulation"),[1] Pall Corporation ("Pall" or the "Company"), on behalf of the Defendants,[2] has caused to be paid $22,500,000 in cash (the "Settlement Amount") into an interest-bearing escrow account maintained by Lead Counsel as escrow agent on behalf of the Class,[3] in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims.  The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs, and for Court-awarded attorneys' fees and expenses.  The remainder after these expenditures, the "Net Settlement Fund," will be distributed to members of the Class who are not otherwise

---

[1]    Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Stipulation.

[2]    Defendants are Pall, Eric Krasnoff and Lisa McDermott.

[3]    "Class" means all Persons who purchased or otherwise acquired Pall common stock between April 20, 2007 and August 2, 2007, inclusive.  Excluded from the Class are Persons or entities who submit valid and timely requests for exclusion from the Class, and Defendants, members of the immediate family of any such Defendant, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has or had a controlling interest during the Class Period, the officers and directors of Pall during the Class Period, and legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person.

787386_1

excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice").

Lead Counsel respectfully submit that this Settlement is a very good recovery for the Class under the circumstances, given the serious obstacles to recovery.  This Settlement was reached by Lead Counsel, with the support of Lead Plaintiff, following aggressive litigation efforts and discussions with Defendants.  For instance, Lead Plaintiff: (a) thoroughly investigated the facts underlying Pall's quarterly and annual financial statements and representations related to the Class Period; (b) analyzed and reviewed industry and securities analyst reports and media files concerning Pall, including press releases and statements issued by Pall and the Individual Defendants; (c) analyzed and reviewed approximately 14 witness accounts of Pall's operations and finances given by percipient witnesses, including former Pall employees; (d) researched and filed two comprehensive complaints including the operative Consolidated Amended Complaint for Violations of Federal Securities Laws ("CAC") filed on August 4, 2008; (e) successfully opposed Defendants' motion to dismiss the CAC by drafting and filing Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss; (f) propounded discovery, including interrogatories and requests for production, on Defendants; (g) served ten subpoenas on third parties requesting both documents and deposition testimony; (h) aggressively pursued discovery from Defendants and numerous third parties pursuant to Lead Plaintiff's discovery requests and subpoenas; (i) successfully moved the Court for key documentary evidence which Defendants sought to withhold; (j) reviewed and analyzed approximately 19,000 pages of documents produced from Defendants and third parties in

- 2 -

response to Lead Plaintiff's document requests and subpoenas; (k) retained and consulted with a tax expert regarding Pall's tax fraud scheme; (l) retained and consulted with a loss causation and damages expert regarding Pall stock price movement during and around the Class Period; (m) researched and filed a motion for class certification; and (n) prepared a comprehensive mediation statement, participated in mediation, and conducted extensive settlement negotiations. *See* paragraph 4 to the Declaration of Samuel H. Rudman in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Distribution of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses ("Rudman Decl."), submitted herewith.

Further, Lead Plaintiff faced significant risks moving forward with the litigation. Though the Court dismissed the entirety of Defendants' motion to dismiss, it warned that Lead Plaintiff had satisfied its burden by a razor thin margin and would face further questions at the summary judgment stage. *Id.*, ¶¶59-61. Thus, when viewed in light of the risks that Lead Plaintiff would not prevail on class certification, summary judgment, trial or a possible appeal, the Settlement is a very good result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, including both fact and expert discovery. As discussed below and in the Rudman Declaration, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, firmly support approval of this Settlement.

On August 20, 2012, the Court entered its Preliminary Approval Order, which directed that a hearing be held on December 14, 2012 to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). Pursuant to the Preliminary Approval Order, the Notice

787386_1

was mailed to over 43,800 potential members of the Class commencing on September 14, 2012.[4]
The Summary Notice was also published in the national edition of *Investor's Business Daily* and
over the *Business Wire* on September 21, 2012. *See* Ferrara Decl., ¶11.

The Court-approved Notice, attached to the Ferrara Declaration as Exhibit A, contains a
detailed description of the nature and procedural history of the Action, as well as the material terms
of the Settlement, including: (i) Lead Plaintiff's estimate of the average per share recovery; (ii) the
manner in which the Net Settlement Fund (as defined above) will be allocated among participating
Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right
and mechanism for Class Members to opt out or exclude themselves from the Class; and (v) the right
and mechanism for Class Members to object to the Settlement.

The reaction of Class Members to the Settlement confirms the reasonableness of Lead
Plaintiff's decision to resolve the Action against the Defendants in exchange for the payment of the
Settlement Amount. As of the date of this Memorandum, which is approximately 10 days prior to
the November 30, 2012 deadline for the submission of objections or requests for exclusion, no
objections have been filed as to any aspect of the Settlement. Nor have any Class Members
submitted requests for exclusion from the proposed Settlement. Therefore, the reaction of the Class
strongly supports the inference that the Class agrees that the Settlement and Plan of Distribution are
fair, reasonable, and adequate.[5]

---

[4]     *See* paragraphs 3 through 9 of the Declaration of Charles E. Ferrara Re: (1) Mailing of the
Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form,
(2) Publication of the Summary Notice, and (3) Internet Posting ("Ferrara Decl."), which is
submitted herewith.

[5]     If any objections are received, they will be addressed in a reply memorandum, which will be
filed and served by December 7, 2012.

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the procedural posture of the case, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiff and Lead Counsel believe that the Settlement is fair, reasonable, and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of this Settlement. In addition, the Plan of Distribution, which was developed with the assistance of Lead Plaintiff's damages consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II.      HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rudman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.      The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court. A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007). While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general

- 5 -

policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As the Second Circuit has stated:

> [T]he role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'"

*Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir. 1972).[6]

---

[6]     Citations are omitted and emphasis is added unless otherwise noted.

B.     **The Settlement Is Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Grp.*, 233 F.R.D. at 315; *see also In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004).   A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and [where] plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *10-*11 (S.D.N.Y. May 13, 2011) (court must pay close attention to the negotiating process, that they were at arm's length, and that class counsel had the requisite experience and ability); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after seven months of arm's-length settlement negotiations, and following a mediation session with U.S. District Judge Daniel Weinstein (Ret.) and subsequent settlement discussions.   Rudman Decl., ¶6.   In addition, no question exists that Lead Counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiff's claims, and extensive briefing on the motion to dismiss and class certification – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated.   All of these considerations confirmed the reasonableness of the Settlement, and thus, little doubt exists

- 7 -

that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

### C.   The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: Whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Grp.*, 233 F.R.D. at 310.  The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  All nine factors need not be satisfied.  Instead, the court should look at the totality of these factors in light of the specific circumstances involved.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, this Settlement represents an excellent recovery for the Class, and, in the judgment of Lead Counsel, there is serious doubt that a more favorable result was possible.  As such, the Settlement clearly warrants this Court's final approval.

787386_1

D.      **The Settlement Satisfies the Second Circuit Criteria for Approval**

1.      **The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'"). Here, Defendants' adamant contention that they did no wrong would likely have contributed to a lengthy and expensive litigation should the case have proceeded to trial.

Further, the securities claims advanced by Lead Plaintiff involve numerous complex legal and factual issues relating to Pall's alleged financial fraud whereby Defendants diverted hundreds of millions of dollars in foreign earnings to fund the Company's domestic operations without paying the requisite U.S. taxes on those funds over a period of nine years. Rudman Decl., ¶¶17-22.

The CAC alleges that on March 28, 2008, Pall issued its Annual Report on SEC Form 10-K for the fiscal year ended July 31, 2007, which included restated prior period financial statements revealing the true magnitude of the fraud. Rudman Decl., ¶21. As reported, through July 31, 2006, Defendants overstated Pall's stockholders' equity by $241,599,000, or nearly 26%. *Id.* Pall's originally reported earnings for fiscal 2006 alone were overstated by $93,353,000, or 179%. *Id.* For the first nine months of fiscal 2007, Pall's reported earnings were overstated by $36,592,000, or 33%. *Id.* Through July 31, 2007, the Company recognized $277,805,000 in additional taxes, penalties, and interest. *Id.*

Indeed, many of Lead Plaintiff's allegations, and the defenses raised by Defendants, would require complex analysis from each party's tax experts. In addition, the legal issues in this Action

- 9 -

are equally complex – proving falsity, materiality, causation, scienter, and damages – and would also require expert testimony from both sides.

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants and the Court have been spared the delay and expense of continued litigation. Even if the Class could recover a judgment larger than the settlement after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *17-*18 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The $22.5 million Settlement at this juncture results in an immediate and substantial tangible recovery for the Class without the considerable risk, expense, and delay of proceeding to summary judgment, trial, and appeal. Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.    The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica Grp.*, 233 F.R.D. at 311-12. One

- 10 -

court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21.  Here, in response to a wide-ranging Court-approved notice program, not a single Class Member has objected to the Settlement or any of its terms to date; nor have any Class Members requested exclusion from the Class.  Rudman Decl., ¶¶68-70.  Thus, the reaction of the Class, those affected by the Settlement, underscores the propriety of the Settlement and should provide additional comfort to this Court in approving the Settlement.

### 3.      The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002).  *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (it is not necessary for a court to find parties engaged in extensive discovery; a court must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *20-*21 (same).[7]

---

[7]      In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is denied or an

787386_1

Here, Lead Counsel negotiated a substantial settlement only after conducting an extensive investigation, including the interviews of approximately 14 potential witnesses, successfully briefing Defendants' motion to dismiss, analyzing all of Pall's public filings, reviewing approximately 19,000 pages of documents from Defendants and third parties, noticing numerous key depositions, producing approximately 1,700 pages of documents from Lead Plaintiff, and participating in a mediation session with Judge Weinstein.  Lead Counsel also researched the applicable law with respect to Lead Plaintiff's claims and the Defendants' potential defenses, and consulted with investigators, forensic accounting consultants, a tax expert regarding Pall's alleged tax fraud scheme, as well as a loss causation and damages expert who provided advice and assistance on issues relating to Pall's stock price movement during and around the Class Period.  Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial.  *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *10 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "'have a clear view of the strengths and weaknesses of their cases'").  As such, Lead Counsel had sufficient information to negotiate intelligently the terms of the Settlement that is before the Court for approval.  *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001).  Therefore, this Court should find that this factor also supports the Settlement.

### 4.        The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See*

---

answer is filed.  Because the Court here denied Defendants' motion to dismiss, the parties have engaged in formal discovery.

*Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German Bank*, 80 F. Supp. 2d at 177.  While Lead Counsel believe that Lead Plaintiff would have prevailed on its motion for class certification, and at summary judgment and trial, it is also clear that ultimate success is not assured, and this Settlement, when viewed in light of the risks of proving liability, proving damages, and enforcing and collecting a judgment, is undoubtedly fair, adequate, and reasonable.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiff faced numerous hurdles to establishing liability.  This Action involves claims for relief under the Securities Exchange Act of 1934 (the "Exchange Act").  Under the Exchange Act, Lead Plaintiff must establish that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities.  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  Based on the defenses that Defendants have raised, Lead Counsel recognize that establishing liability at trial, should Lead Plaintiff even get that opportunity, was not guaranteed.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").

Most significantly, Lead Plaintiff faced substantial risks in proving that Defendants acted with scienter.  *See Ernst*, 425 U.S. at 193 (to prove scienter, plaintiffs have the burden of demonstrating that defendants acted with an "intent to deceive, manipulate, or defraud").  Though the Court held in its ruling on the motion to dismiss that Lead Plaintiff sufficiently pleaded

- 13 -

actionable misstatements or omissions, the Court cautioned that Lead Plaintiff satisfied its burden with respect to scienter only by a razor thin margin.  Rudman Decl., ¶59.  Further, the Court warned that if Lead Plaintiff did not further establish scienter through its discovery efforts, the Court would be forced to revisit Defendants' claims on summary judgment.  *Id*., ¶60.  In light of the Court's comments regarding its burden of proving scienter, Lead Plaintiff faced a tremendous risk at the summary judgment stage – and at trial.  In light of these risks, the proposed Settlement represents a favorable result for the Class at this juncture of the litigation.

### 5.    The Considerable Risk of Establishing Damages

Even if it successfully established liability, Lead Plaintiff also faced substantial risk in proving the existence and the amount of damages.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases).  Under the Exchange Act, Lead Plaintiff must establish that the artificial inflation in the stock price was caused by the alleged misrepresentations or omissions of material fact.  Lead Counsel, with the assistance of their damages consultant, calculated the damages suffered by the Class attributable to the alleged misstatements and omissions.  This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable.  As such, its viability as an actual calculation for damages could be affected by many factors that may arise in the Action.

The determination of damages in this litigation is a complex matter which would require the presentation of expert testimony.  As a result, the Class would ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail.  While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles

- 14 -

remained.  First, the Court must determine that Lead Plaintiff's damages model is admissible and

only then may a jury determine whether Lead Plaintiff's or Defendants' model is more accurate.

The Class is by no means assured of a ruling in their favor.  *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-

0388-CV-W-FJG, 2005 WL 1138833, at *2-*4 (W.D. Mo. Mar. 23, 2005) (granting defendants'

motion to exclude plaintiffs' expert testimony); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000

U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert

testimony).  It is then possible that, in the unavoidable "battle of experts," a jury might disagree with

the Class's expert, or merely find Defendants' expert more persuasive.[8]

Because of these considerations, the likelihood of proving damages, even assuming the Class

prevailed on the liability issue, is somewhat difficult.  *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at

*29.  As a result, this factor also weighs in favor of the Settlement.

**6.     The Risks of Maintaining the Class Action Through Trial**

Had the Settlement not been reached, there is no assurance that Lead Plaintiff's pending

motion for class certification would be granted and/or that Class status, if granted, would be

maintained, since a court may exercise its discretion to re-evaluate the appropriateness of class

certification at any time.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y.

1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v.*

---

[8]     *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of
damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)
("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony
would be credited, and ultimately, which damages would be found to have been caused by
actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*,
798 F.2d 35 (2d Cir. 1986).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001)
("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the
jury would believe").

*Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation).  Here, Defendants would have aggressively challenged the class certification motion, and they would likely have attempted to remove the expected class representative.  Even if the class certification motion was granted, Defendants would likely continue to attempt to find infirmities with the class representative and remove it from that role.  The Settlement avoids any uncertainty with respect to these issues.

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33.   The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement.").  *See also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693).  Here, had the parties not reached an agreement to settle, the litigation faced the possibility of being dismissed at the summary judgment stage, a scenario that would result in the Class not

- 16 -

787386_1

receiving any compensation whatsoever.  However, there is now a $22.5 million settlement fund which will be allocated among Class Members who submit valid claim forms.  Therefore, this Settlement represents a recovery which is undoubtedly better than no recovery.

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the Class.  *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  This case has been pending for over five years, and could be expected to last additional years had the Settlement not been reached.  Moreover, in light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, and then trying to collect on any judgment, the fairness of this substantial settlement is clearly apparent.  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

### 8.    The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement.  *Grinnell*, 495 F.2d at 463.  However, the fact that Defendants could have paid more money does not render the Settlement unreasonable.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *23 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate").  "Where, as here, the other Grinnell factors weigh in favor of approval, this

- 17 -

factor alone does not suggest the settlement is unfair." *Id.* at \*23-\*24.  Certainly, though, no guarantee exists as to whether Pall can sustain itself for years while the Action proceeds through the courts.  Thus, even if Pall presently is able to withstand a greater judgment, it may not be able to do so in the future.

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## IV.     THE PLAN OF DISTRIBUTION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'"  *Maley*, 186 F. Supp. 2d at 367; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005).  A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Am. Bank Note*, 127 F. Supp. 2d at 429-30; *see also WorldCom*, 388 F. Supp. 2d at 344 (same).  Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Distribution, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with their damages consultant, ensuring its fairness and reliability.  *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at \*39.  Under the proposed Plan of Distribution, each Authorized Claimant (as defined in Section IV, ¶1.1 of the Stipulation) will

- 18 -

receive a *pro rata* share of the Net Settlement Fund, with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Distribution takes into account, among other things, whether and when Class Members sold their shares. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement must benefit all class members equally. *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Distribution is fair and reasonable, and respectfully submit that it should be approved by the Court. Notably, not one objection to the Plan of Distribution has been filed, which also supports approval by the Court. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *40; *Maley*, 186 F. Supp. 2d at 367.

787386_1

V.     **CONCLUSION**

The Settlement reached in this Action is a very good result under the difficult circumstances present here.  For the foregoing reasons, the $22.5 million cash Settlement and Plan of Distribution of the Settlement proceeds are fair, reasonable, and adequate and should be granted the Court's final approval.

DATED:  November 20, 2012                Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          ROBERT M. ROTHMAN
                                          MARIO ALBA JR.


                                                s/ Samuel H. Rudman
                                          _____
                                              SAMUEL H. RUDMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY 11747
                                          Telephone:  631/367.7100
                                          631/367.1173 (fax)

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          AELISH M. BAIG
                                          Post Montgomery Center
                                          One Montgomery Street, Suite 1800
                                          San Francisco, CA  94104
                                          Telephone:  415/288-4545
                                          415/288-4534 (fax)

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          LAWRENCE A. ABEL
                                          ROBERT R. HENSSLER JR.
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          Lead Counsel for Plaintiffs

787386_1

VANOVERBEKE MICHAUD & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

- 21 -