UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

In re PALL CORP. SECURITIES
LITIGATION

————————————————————

This Document Relates To:

    ALL ACTIONS.

————————————————————

:    Master File No. 2:07-cv-03359-JS-GRB
:
:
:    <u>CLASS ACTION</u>
:
:
:    LEAD COUNSEL'S MEMORANDUM OF
:    LAW IN SUPPORT OF MOTION FOR AN
:    AWARD OF ATTORNEYS' FEES AND
x    EXPENSES

787327_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    PRELIMINARY STATEMENT ................................................................1

III.   HISTORY OF THE ACTION ...................................................................2

IV.    ARGUMENT ..............................................................................................5

     A.    Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund................................................................5

     B.    The Court Should Award a Reasonable Percentage of the Common Fund............7

     C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ...................9

          1.    The Time and Labor Expended by Counsel .............................................10

          2.    The Risks of the Litigation .......................................................................11

               a.    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee .....................................................11

               b.    Litigation Risks ...............................................................13

               c.    Risk as to Damages ..........................................................14

          3.    The Magnitude and Complexity of the Litigation ...................................14

          4.    The Quality of Representation ..................................................................15

          5.    Public Policy Considerations ....................................................................16

     D.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method ....................................17

     E.    The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check.................................................................................19

     F.    The Class's Reaction to the Fee Request ...........................................................22

V.     LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION ........................22

VI.    CONCLUSION..........................................................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ........................................................................13

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)...................................................................................6, 16

*Blum v. Stenson*,
    465 U.S. 886 (1984)........................................................................................17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).........................................................................................5

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) .........................................................................7

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .........................................................................7

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................14, 17

*Clark v. Ecolab Inc.*,
    No. 07 Civ. 8623 (PAC), 2010 WL 1948198
    (S.D.N.Y. May 11, 2010)................................................................................18

*Collins v. Olin Corp.*,
    No. 3:03-cv-945(CFD), 2010 WL 1677764
    (D. Conn. Apr. 21, 2010)...............................................................................18

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991) ...............................................................21

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................................11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................19

**Page**

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..............................................................................*passim*

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ..........................................................................7

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
  (S.D.N.Y. Oct. 24, 2005) ................................................................................8

*In re Acclaim Entm't, Inc. Sec. Litig.*,
  No. 2:03-CV-1270 (JS)(ETB), slip op.
  (E.D.N.Y. Oct. 2, 2007) .............................................................................8, 18

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................8, 9, 11

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
  (S.D.N.Y. Apr. 6, 2006)................................................................................14

*In re Brocade Sec. Litig.*,
  No. 3:05-CV-02042-CRB, slip op.
  (N.D. Cal. Jan. 26, 2009) ..............................................................................20

*In re Brown Co. Sec. Litig.*,
  355 F. Supp. 574 (S.D.N.Y. 1973) ................................................................15

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .........................................................................11

*In re CVS Corp. Sec. Litig.*,
  No. 01-11464 (JLT), slip op.
  (D. Mass. Sept. 7, 2005) ................................................................................21

*In re Doral Fin. Corp. Sec. Litig.*,
  No. 1:05-md-01706-RO, slip op.
  (S.D.N.Y. July 17, 2007) ..........................................................................8, 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  No. 07 Civ. 10588 (PAE), slip op.
  (S.D.N.Y. Nov. 2, 2011)................................................................................18

- iii -

**Page**

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964
    (E.D.N.Y. Sept. 18, 2007)............................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................8, 23

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...........................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...................................................................9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..........................................................14, 21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003).........................................................22

*In re Interpublic Sec. Litig.*,
    No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
    (S.D.N.Y. Oct. 27, 2004) .........................................................................6, 7

*In re Ivan F. Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995) ..............................................................20

*In re JAKKS Pac., Inc. S'holders Class Action Litig.*,
    No. 04-CV-8807 (RJS), slip op.
    (S.D.N.Y. Oct. 28, 2010) ............................................................................18

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007)...........................................................................12

*In re L.G. Philips LCD Co., Ltd. Sec. Litig.*,
    No. 1:07-cv-00909-RJS, slip op.
    (S.D.N.Y. Mar. 17, 2011) ...........................................................................18

*In re LaBranche Sec. Litig.*,
    No. 03-CV-8201 (RWS), slip op.
    (S.D.N.Y. Jan. 22, 2009)........................................................................8, 18

787327_1

**Page**

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663
   (S.D.N.Y. Nov. 26, 2002) ............................................................................9

*In re Med. X-Ray Film Antitrust Litig.*,
   No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888
   (E.D.N.Y. Aug. 7, 1998) ............................................................................17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
   (S.D.N.Y. Feb. 1, 2007) ..............................................................................20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................21

*In re OSI Pharms., Inc. Sec. Litig.*,
   No. 2:04-CV-05505-JS-WDW, slip op.
   (E.D.N.Y. Aug. 22, 2008) ........................................................................8, 18

*In re Prudential Sec. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ..............................................................11

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ........................................................................22

*In re RJR Nabisco, Inc. Sec. Litig.*,
   No. MDL 818 (MBM), 1992 WL 210138
   (S.D.N.Y. Aug. 24, 1992) ............................................................................21

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) .............................................................9

*In re Thirteen Appeals Arising out of the San Juan
Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ...........................................................................7

*In re Tommy Hilfiger Sec. Litig.*,
   No. 1:04-CV-07678-SAS, slip op.
   (S.D.N.Y. Oct. 16, 2008) ..............................................................................8

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
   No. 1:03-CV-8284 (RWS), slip op.
   (S.D.N.Y. Dec. 6, 2006).............................................................................19

- v -

**Page**

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
   (S.D.N.Y. Nov. 7, 2007) .................................................................................6, 7, 8

*In re Veritas Software Corp. Sec. Litig.*,
   No. C-03-0283 MMC, 2005 WL 3096079
   (N.D. Cal. Nov. 15, 2005) ...................................................................................21

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................8

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..................................................................17, 19

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................17

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ...............................................................................................6

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ...................................................................................7

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 WL 2025106
   (E.D.N.Y. Jan. 20, 2010) .....................................................................................19

*Kurzweil v. Philip Morris Cos., Inc.*,
   No. 94 Civ. 2373 (MBM), 1999 WL 1076105
   (S.D.N.Y. Nov. 30, 1999) .....................................................................................21

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973), subsequently refined in
   *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
   540 F.2d 102 (3d Cir. 1976)..................................................................................19

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................ *passim*

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) ............................................................................14

- vi -

**Page**

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913
   (S.D.N.Y. Mar. 3, 2010) ...............................................................................18

*Menkes v. Stolt-Nielsen S.A.*,
   No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066
   (D. Conn. Jan. 25, 2011) ..............................................................................18

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ..............................................................................17, 20

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d Cir. 1983) ........................................................................20

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...........................................................................7

*Rabin v. Concord Assets Group, Inc.*,
   No. 89 Civ. 6130 (LBS), 1991 WL 275757
   (S.D.N.Y. Dec. 19, 1991) ...............................................................................21

*Rawlings v. Prudential-Bache Props.*,
   9 F.3d 513 (6th Cir. 1993) ................................................................................7

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ......................................................15, 16, 17

*Reyes v. Buddha-Bar NYC*,
   No. 08 Civ. 02494 (DF), 2009 WL 5841177
   (S.D.N.Y. May 28, 2009) ................................................................................19

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................12

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ..................................................................21

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) ..........................................................................6, 7

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
   No. 02 CV 2133 (EBB), slip op.
   (D. Conn. Jan. 21, 2005) ................................................................................18

- vii -

Page

*Silverberg v. People's Bank,*
    23 Fed. Appx. 46 (2d Cir. 2001) .......................................................................................18

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ...........................................................................................7

*Spann v. AOL Time Warner, Inc.,*
    No. 02 Civ. 8238 (DLC), 2005 WL 1330937
    (S.D.N.Y. June 7, 2005) ....................................................................................................19

*Stefaniak v. HSBC Bank USA, N.A.,*
    No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872
    (W.D.N.Y. July 8, 2008) ...............................................................................................8, 19

*Swedish Hosp. Corp. v. Shalala,*
    1 F.3d 1261 (D.C. Cir. 1993) .............................................................................................7

*Taft v. Ackermans,*
    No. 02 Civ. 7951 (PKL), 2007 WL 414493
    (S.D.N.Y. Jan. 31, 2007) ..................................................................................................18

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,*
    No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608
    (S.D.N.Y. May 14, 2004) ..................................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ......................................................................................................6, 16

*Weiss v. Mercedes-Benz of N. Am.,*
    899 F. Supp. 1297 (D.N.J. 1995) .....................................................................................21

*Zerkle v. Cleveland-Cliffs Iron Co.,*
    52 F.R.D. 151 (S.D.N.Y. 1971) ........................................................................................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) .................................................................................................................................3
    §78t(a) .................................................................................................................................3
    §78u-4(a)(6) ....................................................................................................................2, 8

Federal Rules of Civil Procedure
    Rule 9(b) .............................................................................................................................4
    Rule 12(b)(6) .......................................................................................................................4

787327_1

**Page**

**SECONDARY AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
   §2.06.............................................................................................................21

7B Charles Alan Wright, Arthur R. Miller,
Mary Kay Kane, *Federal Practice and Procedure* (3d ed. 2005)
   §1803...............................................................................................................6

Report of the Third Circuit Task Force,
*Court Awarded Attorney Fees*,
   108 F.R.D. 237 (Oct. 8, 1985) .......................................................................7

787327_1

## I.    INTRODUCTION

Lead Plaintiff's counsel ("Lead Counsel") have succeeded in obtaining a cash settlement fund of $22.5 million for the benefit of the Class.[1]  This very good result, obtained despite serious obstacles to recovery, is a credit to Lead Counsel's vigorous prosecution of the litigation.  Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 27.5% of the Settlement Fund.  In addition, Lead Counsel respectfully request $152,855.17 in expenses that were reasonably and necessarily incurred in prosecuting this consolidated class action (the "Action") and obtaining this Settlement for the benefit of the Class.

## II.   PRELIMINARY STATEMENT[2]

The $22.5 million settlement obtained by Lead Counsel is a very good result, considering the fact that the Court held that Lead Plaintiff satisfied its burden on the motion to dismiss by a razor thin margin, thus adding risk that the case could be summarily disposed of after years of litigation upon Defendants' motion for summary judgment following the close of fact discovery, or at trial.  As explained below and in the Rudman Declaration, Lead Counsel expended significant time and expenses and overcame significant obstacles to reach this resolution for the Class.  Specifically, Lead Plaintiff faced significant challenges to proving scienter with respect to each of the Defendants.  The success of any of the asserted defenses affects the amount of damages the Class may recover.  If

---

[1]    All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Amended Settlement Agreement.

[2]    The accompanying Declaration of Samuel H. Rudman in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Distribution of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses ("Rudman Decl.") is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the Action, the claims asserted, Lead Plaintiff's and Lead Counsel's investigation and litigation efforts, and the negotiations leading to the Settlement.

787327_1

any or all of Defendants' positions prevailed, liability would not have been established and/or damages could have been significantly less than Lead Plaintiff's consultant had calculated. Thus, Lead Counsel's efforts have resulted in a very favorable recovery.

For their efforts and the risks and contingencies they faced, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 27.5% of the Settlement Fund and expenses in the amount of $152,855.17, plus interest on both amounts at the same rate that is earned by the Settlement Fund.[3] Following an extensive Court-ordered notice program, not a single Class Member has objected to this fee and expense request, and Lead Counsel respectfully submit that these amounts are fair and reasonable under the circumstances.[4]

## III.    HISTORY OF THE ACTION

From the outset of this Action and despite the mandatory discovery stay imposed by the PSLRA, Lead Counsel undertook an extensive investigation and analysis, including reviewing Pall's public filings and other information industry and securities analyst reports and media files concerning Pall, including press releases and statements issued by Pall and the Individual

---

[3]     Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), fees and expenses awarded to counsel for the class include "prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

[4]     As of the filing of this fee memorandum, which is before the November 30, 2012 deadline for filing objections, Lead Counsel have not received any objections to the fee request. Pursuant to the Court's August 20, 2012 Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), more than 43,800 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") were mailed to potential members of the Class, advising that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 27.5% of the Settlement Fund, plus expenses of no greater than $200,000. If any timely objections are received, Lead Counsel will address them in a reply brief, which will be filed with the Court no later than December 7, 2012.

787327_1

Defendants and approximately 14 witness accounts of Pall's operations and finances given by percipient witnesses, including former Pall employees.

Following their appointment as Lead Plaintiff and Lead Counsel, and based on an extensive investigation, Lead Plaintiff filed its Consolidated Amended Complaint for Violations of Federal Securities Laws (the "Complaint") on August 4, 2008. The Complaint asserted claims for §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants.

The Complaint alleges, among other things, that Defendants engaged in a massive financial tax fraud. *See* Rudman Decl., ¶17. Pall, through its subsidiaries, had engaged in certain intercompany sales transactions which were never settled through actual cash payments. *Id.* The Complaint also alleges that, as part of this scheme, Defendants diverted hundreds of millions of dollars (approximating between $398 million and $677 million) from Pall's foreign subsidiary, Pall Netherlands BV, to fund the Company's domestic operations, thus reducing its domestic borrowing costs and providing Pall with unlawful tax-free use of the funds. *Id.*, ¶19.

The Complaint alleges that on July 19, 2007, Pall announced that the Audit Committee of its Board of Directors had commenced an "inquiry" into the "possibly" material understatement of U.S. income tax payments and into its provision for income taxes in certain prior periods beginning with its fiscal year ended July 31, 1999. *Id.*, ¶20. In response to this announcement, the price of Pall common stock declined from $48.78 per share to $41.11 per share, on extremely heavy trading volume. *Id.* On August 2, 2007, Pall issued a press release announcing that the Company's annual and quarterly financial statements for the fiscal years 1999 through 2006 and for each of the fiscal quarters ended October 31, 2006, January 31, 2007, and April 30, 2007 "should no longer be relied upon" and that a restatement of some or all of those financial statements would be required. *Id.* In response to this announcement, the price of Pall common stock declined from $39.10 per share to

- 3 -

$38.62 per share, on extremely heavy trading volume. *Id*. On January 29, 2008, Pall announced the conclusion of its Audit Committee's inquiry into the Company's underpayment of U.S. income taxes. *Id*. Among other findings, the inquiry concluded that the underpayment resulted, primarily, from the intercompany sale of products from Pall Netherlands BV to Medsep Corporation that were not settled through actual cash payments. *Id*.

The Complaint further alleges that on March 28, 2008, Pall issued its Annual Report on SEC Form 10-K for the fiscal year ended July 31, 2007, which included restated prior period financial statements revealing the true magnitude of the fraud. *Id*., ¶21. As reported, through July 31, 2006, Defendants overstated Pall's stockholders' equity by $241,599,000, or nearly 26%. *Id*. Pall's originally reported earnings for fiscal 2006 alone were overstated by $93,353,000, or 179%. For the first nine months of fiscal 2007, Pall's reported earnings were overstated by $36,592,000, or 33%. *Id*. Through July 31, 2007, the Company recognized $277,805,000 in additional taxes, penalties, and interest. *Id*.

The Complaint further alleges that during the time that Pall was materially understating its tax liabilities and materially overstating its financial results, the Individual Defendants and other Pall insiders sold more than $47.8 million worth of their personally-held shares to the unsuspecting market. *Id*., ¶22.

On September 19, 2008, Defendants filed a motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and 9(b), and on November 3, 2008, Lead Plaintiff filed a comprehensive memorandum in opposition to Defendants' motion to dismiss. *Id*., ¶23. On September 21, 2009, the Court issued a Memorandum & Order denying Defendants' motion to dismiss the Complaint, finding that Lead Plaintiff had sufficiently pled scienter as required by the PSLRA. *Id*., ¶23. In rejecting Defendants' assertions that they were unaware of information

- 4 -

demonstrating false financials and that the tax code was complex, the Court held that "Defendants should have familiarized themselves with the facts relevant to tax and accounting practices to ensure that the SEC filings they signed were truthful and accurate, at least in so far as to prevent inaccuracies of such magnitude that continued for such a prolonged period of time." *Id*. The Court further noted that "financial statements were signed by Krasnoff as CEO" and "McDermott as Chief Accountant" and they "(1) had access to information suggesting that the underlying tax liabilities and rate were inaccurate, and, (2) knew, or should have known that any reports or statements based on these numbers were not accurate, especially given the significance of the inaccuracies." *Id*.

With Lead Plaintiff's motion for class certification pending and after a mediation session with U.S. District Judge Daniel Weinstein (Ret.), the parties continued arm's-length negotiations to determine whether the Action could be resolved. Thereafter, the parties engaged in direct extensive settlement negotiations and reached an agreement-in-principle to settle this Action on or about December 15, 2011. The parties then negotiated the terms of an amended settlement agreement, which was fully executed on May 16, 2012.

On August 20, 2012, the Court preliminarily approved the terms of the Settlement and directed that Lead Counsel cause the mailing of the Notice and Proof of Claim and Release form to all potential Class Members identifiable with reasonable effort, and that the Summary Notice be published in *Investor's Business Daily* and over the *Business Wire*.

## IV.    ARGUMENT

### A.    Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also*

- 5 -

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchants Bank*, 166 F.3d 456, 459-60 (2d Cir. 1999).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See also Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *7-*8 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to these teachings.  *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a

- 6 -

reasonable fee – set by the court – to be taken from the fund.'").[5]  The "[d]etermination of 'reasonableness' is within the discretion of the district court."  *Id*. at *31.

> **B.    The Court Should Award a Reasonable Percentage of the Common Fund**

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases.  *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *10.  In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d at 48, 49;[6] *Savoie*, 166 F.3d at 460 (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D.

---

[5]      Citations are omitted and emphasis is added unless otherwise noted.

[6]      The use of the percentage-of-the-fund method in common fund cases has been approved by every other Court of Appeals that has addressed the issue.  *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).  Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases.  *Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of the lodestar method and unequivocally recommending that courts use the percentage method in common fund cases).[7]

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g.*, *In re LaBranche Sec. Litig.*, No. 03-CV-8201 (RWS), slip op. (S.D.N.Y. Jan. 22, 2009);[8] *In re Tommy Hilfiger Sec. Litig.*, No. 1:04-CV-07678-SAS, slip op. (S.D.N.Y. Oct. 16, 2008); *In re OSI Pharms., Inc. Sec. Litig.*, No. 2:04-CV-05505-JS-WDW, slip op. (E.D.N.Y. Aug. 22, 2008); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. July 8, 2008); *In re Acclaim Entm't, Inc. Sec. Litig.*, No. 2:03-CV-1270 (JS)(ETB), slip op. (E.D.N.Y. Oct. 2, 2007); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *39-*40 (E.D.N.Y. Sept. 18, 2007); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, slip op. (S.D.N.Y. July 17, 2007); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this

---

[7]    The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

[8]    All unreported authorities referred to herein are attached to the Compendium of Unreported Authorities Cited in Support of Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, submitted herewith.

- 8 -

Circuit is to award attorneys' fees using the percentage method), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *Maley*, 186 F. Supp. 2d at 370 (trend in this Circuit is to use the percentage method); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.  The percentage approach not only aligns the interests of counsel and the class, *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees."  *Am. Bank Note*, 127 F. Supp. 2d at 432.

### C.     The Relevant Factors Confirm that the Requested Fee Is Reasonable

The Second Circuit in *Goldberger* explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  An analysis of these factors demonstrates that the requested fee is fair and reasonable.

### 1.    The Time and Labor Expended by Counsel

Lead Counsel have expended substantial time and effort pursuing this Action on behalf of the Class.  Since its inception over five years ago, Lead Counsel and their para-professionals devoted 4,615.80 hours to this Action.  As discussed more fully above and in the Rudman Declaration, submitted herewith, Lead Counsel conducted an extensive investigation of the issues involved in this case, and drafted a highly-detailed amended complaint.  Lead Counsel also researched and successfully defended an opposition to Defendants' complex motion to dismiss, and participated in settlement discussions during the mediation with Judge Weinstein.  Lead Counsel also propounded discovery requests to Defendants, served ten subpoenas on third parties, and reviewed and analyzed approximately 19,000 pages of documents produced by Defendants and third parties in response to Lead Plaintiff's discovery requests and subpoenas.  Lead Plaintiff also produced approximately 1,700 pages of documents and noticed numerous third party witnesses and Defendants for deposition.  Moreover, Lead Counsel, with the assistance of their damages consultant, calculated the estimated damages suffered by the Class and prepared the proposed Plan of Distribution.  The legal work on this Action will not end with the Court's approval of the proposed Settlement.  Additional hours and resources will necessarily be expended assisting members of the Class with their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries.  The time and effort devoted to this case by Lead Counsel to obtain a $22.5 million settlement confirm that the 27.5% fee request is reasonable.

- 10 -

2.      **The Risks of the Litigation**

a.      **The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee**

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").  This risk encompasses not just the risk of no payment, but also the risk of underpayment.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Lead Counsel in prosecuting this class action.  Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this Action without a guarantee of compensation or even the recovery of out-of-pocket expenses.  Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case

- 11 -

began, and would have received no compensation or even reimbursement of expenses had this case not been successful.

From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs which a case such as this entails. Because of the nature of a contingent practice where cases are predominantly complex lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation and overhead expenses over the past five years, Lead Counsel faced the possibility that they would receive no attorneys' fees. It is wrong to presume that a law firm handling complex contingent litigation always wins. Tens of thousands of hours have been expended in losing efforts. The factor labeled by the courts as "the risks of litigation" is not an empty phrase. There are numerous cases where plaintiff's counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation.[9] *See* Rudman Decl., ¶¶59-63.

---

[9]    The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds

Losses in contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive.  As a result, the fees that are awarded in successful litigations are used to cover enormous overhead expenses incurred during the course of the litigation and are taxed by federal, state, and local authorities.

### b.       Litigation Risks

While Lead Plaintiff remains confident in its ability to prove its claims and to effectively rebut Defendants' defenses, it recognizes that proving liability was far from certain.  First, Lead Counsel would have to have its proposed class certified by the Court.  Next, Lead Plaintiff would no doubt be faced with opposing a comprehensive summary judgment motion from Defendants.  To succeed on its claims, Lead Plaintiff must establish that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities.

As set forth in the Rudman Declaration and in Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Distribution of Settlement Proceeds ("Settlement Brief"), the Court denied Defendants' motion to dismiss allegations regarding scienter with an abundance of caution.  Rudman Decl., ¶¶59-61.  Further, the Court warned that Lead Plaintiff had met its scienter burden only by a razor thin margin and that it would face a much tougher task at the summary judgment stage.  *Id*.  Indeed, the risk of dismissal at the summary judgment stage was real, and Defendants would never concede their defenses regarding scienter – including at trial and perhaps on appeal.

---

and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 13 -

### c.      Risk as to Damages

Whether Lead Plaintiff could prove its estimate of damages was also unsettled.  Defendants strenuously disagreed with Lead Plaintiff's damage estimates.  In order for the Class to recover damages at the level estimated by Lead Plaintiff's damages consultant, Lead Plaintiff would need to prevail on each and every one of the claims alleged.  The damage assessments of the parties' trial experts would be sure to vary substantially, and trial would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for the Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

### 3.      The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that shareholder actions are notoriously complex and difficult to prove.  *See Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  *See also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed

new light on the standard for loss causation."). This Action is no different from the cases referenced above. As described in greater detail in the accompanying Settlement Brief and the Rudman Declaration, this Action involved difficult and complex issues. Lead Counsel undertook their investigation on a contingent basis. Completing discovery, including expert discovery and the likely need to conduct many depositions would have taken a very large investment of additional time, and would have cost several hundred thousand dollars more, at a minimum.

As detailed in the Rudman Declaration, had Lead Plaintiff been successful in the certification of its proposed class, Defendants would have undoubtedly filed a motion for summary judgment. Briefing and discovery to resolve the summary judgment motion would have entailed further substantial expenditure of time and effort. Assuming Lead Plaintiff survived Defendants' summary judgment motion, and assuming a class was certified, trial preparation would have required many additional hours of work, at great expense. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. The "normal" cost of litigation, including copying, travel, depositions, computer support services, and other necessary expenses, are quite high. In addition, this Action was vigorously contested, and Defendants were represented by very experienced and qualified attorneys. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel). Accordingly, these factors support the conclusion that the requested fee is reasonable and fair.

### 4.      The Quality of Representation

The quality of the representation by Lead Counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee. *See Ressler v. Jacobson*,

- 15 -

149 F.R.D. 651, 654 (M.D. Fla. 1992).  It took a great deal of skill to achieve a settlement at this level in this particular case.  Lead Counsel are nationally known leaders in the fields of securities class actions and complex litigation.  This favorable Settlement is attributable to the diligence, determination, hard work, and reputation of Lead Counsel, who developed, litigated, and successfully negotiated the settlement of this Action, an immediate cash recovery in a very difficult case, without the risk of further litigation.

### 5.    Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310; *Tellabs*, 551 U.S. at 319 (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). Plaintiffs' counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required.  The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves.  Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases. Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'"  *Ressler*, 149 F.R.D. at 657.  Thus,

- 16 -

"public policy favors the granting of [attorney] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id*.[10]

As actionable securities fraud exists and society benefits from strong advocacy on behalf of securities holders, public policy favors the granting of the fee and expense application.  *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

### D. The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case.  *Goldberger*, 209 F.3d at 47.  In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace.  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum v. Stenson*, 465 U.S. 886, 903* (1984) ("In tort suits, an attorney might receive one-

---

[10]      *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain*, 805 F. Supp. at 216 (determining that "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

787327_1

third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the Second Circuit. *Silverberg v. People's Bank*, 23 Fed. Appx. 46, 47-49 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly one-third of settlement fund). Indeed, the requested fee is consistent with what courts in this Circuit commonly award in common fund cases. *See Acclaim*, slip op. at 9 (Seybert, J.) (awarding 30% of $13.6 million fund); *OSI Pharms.*, slip op. at 1 (Seybert, J.) (awarding 30% of $9 million fund); *In re Giant Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588 (PAE), slip op. at 20 (S.D.N.Y. Nov. 2, 2011) (Engelmayer, J.) (awarding 33% of $13 million fund); *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (Sullivan, J.) (awarding 30% of $18 million fund); *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066, at *18-*19 (D. Conn. Jan. 25, 2011) (awarding 33-1/3% of $2 million fund); *In re JAKKS Pac., Inc. S'holders Class Action Litig.*, No. 04-CV-8807 (RJS), slip op. at 5 (S.D.N.Y. Oct. 28, 2010) (Sullivan, J.) (awarding 30% of $3.925 million fund); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02 CV 2133 (EBB), slip op. at 8-9 (D. Conn. Jan. 21, 2005) (Burns, J.) (awarding 33-1/3% of $16.5 million fund); *LaBranche*, slip op. at 1 (Sweet, J.) (awarding 30% of $13 million fund); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.175 million fund); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of settlement); *Collins v. Olin Corp.*, No. 3:03-cv-945(CFD), 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund as attorneys' fees); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y.

Mar. 3, 2010) (awarding fees of one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at \*8-\*9 (E.D.N.Y. Jan. 20, 2010) (awarding fees of one-third of settlement fund); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 WL 5841177, at \*4 (S.D.N.Y. May 28, 2009) (awarding fees of one-third of settlement fund); *Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at \*10 (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33-1/3% of fund); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at \*8 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% of settlement fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 40% of settlement fund, and noting that due to the relatively small settlement fund, the requested fee award was necessary to compensate counsel adequately); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund).

### E. The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, a district court may cross check the proposed award against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*). "Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner*

- 19 -

*Commc'ns*, 618 F. Supp. at 747; *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995).  Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and their para-professionals have spent, in the aggregate, 4,615.80 hours in the prosecution of this case.  *See* Declaration of Samuel H. Rudman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, submitted herewith.  The resulting lodestar is $2,253,363.25.  The amount of attorneys' fees requested by Lead Counsel herein, 27.5% of the Settlement Amount, or $6,187,500, plus interest, represents a 2.75 multiplier to counsel's aggregate lodestar.[11]

In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status.  As Lead Counsel's declaration demonstrates, Lead Counsel are among the most prominent, experienced, and well-regarded securities practitioners in the nation.  Therefore, their hourly rates are reasonable here.  *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *73 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates).

Additionally, the multiplier reflected here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere and is fully justified here given the effort required, the risks faced and overcome, and the results achieved.  *See, e.g., In re Brocade Sec. Litig.*, No. 3:05-CV-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) (applying 3.5

---

[11]     The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Jenkins*, 491 U.S. at 283-84; *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two or three years of application).

multiplier); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (applying 4.0 multiplier where motion to dismiss was pending and no formal discovery taken); *In re CVS Corp. Sec. Litig.*, No. 01-11464 (JLT), slip op. at 7 (D. Mass. Sept. 7, 2005) (applying 3.27 multiplier); *Doral*, slip op. at 5 (awarding multiplier of 10.26 on $130 million settlement fund); *Maley*, 186 F. Supp. 2d at 371 ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become common'"); *Kurzweil v. Philip Morris Cos., Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (same); *In re RJR Nabisco, Inc. Sec. Litig.*, No. MDL 818 (MBM), 1992 WL 210138, at *7-*8 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of 6); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee resulting in 9.3 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *1-*2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *see also* 1 Alba Conte, *Attorney Fee Awards* §2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar.").

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also Ikon*, 194 F.R.D. at 196 ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered

weighs in favor of approving class counsel's request of thirty percent."). Lead Counsel invested substantial time and effort prosecuting this Action to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### F.        The Class's Reaction to the Fee Request

To date, the Claims Administrator has sent over 43,800 copies of the Notice to members of the Class informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 27.5% of the Settlement Fund, plus expenses not to exceed $200,000, plus interest on both amounts. The time to object to the fee request expires on November 30, 2012. To date, however, which is approximately 10 days before the objection deadline, not a single objection to the fee and expense request was received. "[S]uch a low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Moreover, "a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive." *Id*. The fact that no objections were received is compelling evidence of the fairness of the fee request.

## V.     LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

Lead Counsel also respectfully request $152,855.17 in expenses incurred while prosecuting this Action. Lead Counsel have submitted a separate declaration regarding the accuracy of these expenses, which are properly recovered by counsel. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class). Most of Lead Counsel's modest expenses are the costs of investigators, damages and taxation experts, and

- 22 -

mediation fees.  These expenses were critical to Lead Plaintiff's success in achieving the proposed Settlement.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [and] [f]or this reason, they are properly chargeable to the Settlement fund.").  Not a single objection to the expense request has been received.  Accordingly, Lead Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## VI.    CONCLUSION

Based on the foregoing and the entire record herein, Lead Counsel respectfully request that the Court award attorneys' fees of 27.5% of the Settlement Fund plus expenses in the amount of $152,855.17, plus interest on both amounts.

DATED:  November 20, 2012                 Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARIO ALBA JR.


                                          s/ Samuel H. Rudman
                                        SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone:  631/367.7100
631/367.1173 (fax)

- 23 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
LAWRENCE A. ABEL
ROBERT R. HENSSLER JR.
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

VANOVERBEKE MICHAUD & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

787327_1